## W. D. JOHNSON v. E. CLEMENTS.

### Decided November 25, 1899.

1. **Partnership Dissolution—Varying Written Contract.**

Where one partner sells out to the other and no mention is made in the written contract of dissolution of a personal debt due by the seller to the buyer growing out of the business and to have been paid at the seller's convenience or when the profits of the firm business would justify it, it is not to be presumed that such debt was not taken into consideration, or was unaffected by the dissolution, and the jury may determine from all the circumstances attending the dissolution what was the intention of the parties in relation thereto, despite the rule as to varying written contracts by parol evidence.

2. **Pleading—Debt Payable When Convenient.**

Where, in an action upon a due bill payable at the convenience of the maker, there is no attempt to declare upon the clause stating such condition, the petition is demurrable.

3. **Practice—Opening and Conclusion—Extent of the Admission.**

Where, after his demurrers to the petition were overruled, defendant, in order to obtain the right to open and conclude, admitted that plaintiff had a good cause of action as set forth in the petition, this did not estop him to complain of the error of the court in overruling his demurrers.

APPEAL from Tarrant. Tried below before Hon. IRBY DUNKLIN.

*Mattock, Cowan & Burney,* for appellant.

*Scott & Brelsford* and *Flournoy & Altman,* for appellee.

STEPHENS, ASSOCIATE JUSTICE.—This appeal is from a recovery had by appellee upon the following due bill or promissory note:

"PECOS, Texas, August 1, 1893.

"Due E. Clements on contract of date July 22, 1893, now on record in the county clerk's office of Reeves County, Texas, thirteen hundred fifty and twenty-eight one-hundred ($1350.28) dollars, which I promise to pay according to the terms of said contract, together with interest at the rate of 10 per cent per annum from date until paid.

(Signed)     "W. D. JOHNSON."

The contract referred to in this instrument was one of partnership between appellant and appellee, who were joint owners of certain real estate in Reeves County, Texas, formed "for the purpose of engaging in a farming and stock raising and milling business at Saragosa in said Reeves County, and to develop and add to the value of said property."

The partnership contract contained, among other clauses, the following: "We further bind ourselves to and with each other that in case either party shall furnish to and for said company of Johnson & Clements money or services in excess of his one-half share of same, then such sum in excess as aforesaid shall bear 10 per cent interest from date of so furnishing same until paid by the party in arrears," providing for a lien on the firm assets to secure the payment for such services and the reimbursement of such excess of money, and further providing that the accounts should be audited every three months and that evidences of debt from one partner to the other should be acknowledged by proper instrument in writing.

Also the following: "But in event either partner falls behind in payments of his pro rata share of the expenses of said firm and the other makes advances to cover such deficit, the one so paying in excess of his share shall demand and receive only the interest of such excess annually, and shall not demand payment of the principal sum from said party in arrears until the latter finds it convenient so to do, or until the revenues and profits of said firm business justify the payment of such deficit in full."

In response to these provisions the instrument declared on was executed.

A written contract for the dissolution of the partnership by a sale of Johnson's interest therein to Clements was entered into July 24, 1894, which was finally consummated by deed of even date with the contract, though made about twenty days afterwards. The evidence tended to show that it was thus antedated to make its date correspond with that of the contract.

Pending negotiations for such dissolution the following letter was written by Johnson to Clements:

"PECOS, Texas, July 16, 1894.

"E. Clements, Esq., Saragosa, Texas:

"Dear Sir:—I have been thinking to-day that if you could arrive at a decision at once, it would suit me much better. If I get the place, I want to commence at once to plant alfalfa, and fifteen days you know makes considerable difference. As you left the matter open this morning, I thought I would make you another proposition, which is this: I will name the price, $7500, plus the amount I owe you, including the interest to date. In other words, if you buy, you pay me $7500 net, and release me from all liability, including all firm and private acts and notes; I to receive $7500 with no take-off whatever nor any discounts for cash. If you pay cash, all right; if not, a note bearing 8 per cent interest. And if I buy your interest I will pay you $7500, plus any excess payments you have made, and assume all liabilities, including all firm accounts and notes, and the note you hold of mine. Now, I think this is clear and correct, and if you want to buy you can now afford to do so at these figures, and if you want to sell, I can now afford to buy. I don't care which way you decide, but would like you to do so at once and come in and let us fix up the transfer. If I am to get it, would like to have it once; and if I am to sell, would like to know it at once. The Honey Grove people wrote to Mr. Casey to find some one to release the land, and I made application to-day through Mr. Casey for the sections immediately around ours. If you buy my interest, I would of course expect to turn this over to you, in case you want it. I made the application for fear he might find some one else wanting it.

"Please let me hear from you at once, and oblige,

(Signed)      "W. D. JOHNSON."

The deed from Johnson to Clements thus recited its consideration: "In consideration of the sum of ten thousand ($10,000) dollars, paid and secured to be paid by Emmet Clements, as follows: Twenty-five hundred ($2500) dollars cash in hand paid, and the balance evidenced by two promissory notes, executed and delivered by said Clements to said Johnson, each for the sum of thirty-seven hundred and fifty ($3750) dollars, of even date herewith, due on or before two and three years respectively after date, payable to said W. D. Johnson or order, bearing 8 per cent interest per annum from date until paid, and providing for the usual 10 per cent attorney's fees."

After the granting clause was the following: "And by the acceptance of this instrument and the property and rights herein conveyed, said Clements assumes and promises to pay all outstanding debts and liabilities of said firm."

The contract made July 24, 1894, in pursuance of which the deed was executed, was destroyed by fire after this suit was instituted, but its con-

'tents were thus given in the testimony of appellee, which was corroborated by other witnesses and not contradicted by any: "I agreed to buy and Mr. Johnson to sell the Saragosa property, consisting of lands and water routes, not particularly described, but reference was had to the accounts of the company and to the records of the county wherein the business was done. Notes for $7500 due in two and three years, at 8 per cent interest, were to be taken. The buyer was to assume the obligations due of the company, and to receive the debts and assets of the company in toto. There was a stipulation there in regard to the surrender of the realty I would acquire, which was omitted from the deed by request. There was furthermore a stipulation that if I found myself unable to comply with the contract, I was to withdraw in at the end of twenty days, and all the obligations assumed were to cease thereby. I affirmed that I would not withdraw if I didn't find myself compelled so to do. There is still an item that escapes me there that I could ordinarily recall. Well, the real essence of the remaining stipulation was that during the interim there should be no unnecessary expense incurred; that nothing should be done that involved the expenditure of money, or words to that effect. I think that about comprised the instrument. The record of the instrument was forbidden. There was to be no public announcement, because I felt unable to stand under that obligation on my own strength. Nothing whatever was said about this due bill."

As to the circumstances attending the execution of the contract of July 24th there was some conflict in the evidence, the testimony of Johnson tending to show that Clements then and there expressly accepted the proposition of Johnson to sell contained in the letter above quoted, provided within twenty days he could make arrangements for the money to cover the operating expenses, etc., and that the contract was but an informal agreement entered into for this purpose, that is, to give him twenty days in which to make such arrangements or to ascertain that he could not do so; while the testimony of Clements tended to show that he did not accept the proposition contained in the letter, but intended the written contract to be complete within itself and not a qualified acceptance of the proposition contained in the letter.

There was a like conflict between them as to what was meant by that clause of the deed which recited as part of the consideration "twenty-five hundred dollars cash in hand paid," the testimony of Johnson tending to show that this was inserted to cover the obligation declared on in this suit, together with the outstanding debts of said firm, and that of Clements tending to show that only firm debts were intended to be so included.

The evidence, parol and written, bearing upon these issues was admitted on the trial, but its effect was in a measure controlled by the court's charge, as follows:

"If you believe from the evidence that on July 24, 1894, and before the execution of the deed of conveyance from defendant to plaintiff above referred to, the plaintiff and defendant entered into and executed a

written contract by the terms of which defendant agreed to convey to plaintiff the property described in said deed of conveyance, and in consideration therefor it was stipulated that the plaintiff should execute to defendant two promissory notes for the sum of $3700 each, payable in two and three years after date, with interest at 8 per cent per annum from date, and that in said written agreement it was further stipulated that plaintiff should pay all outstanding obligations of Johnson, Clements & Co., and if you further believe that said agreements of plaintiff were the only agreements of plaintiff stipulated in said written contract, then you are instructed that by the terms of said written conract, if made, defendant obligated himself to convey to plaintiff the property mentioned in said contract, and that' the satisfaction and cancellation of the due bill sued on was no part of the consideration for said obligation of defendant to make said conveyance.

"If under foregoing instructions you find that said written contract, if any, was made, and that it contained no other stipulation of any other agreement to be performed by plaintiff than those mentioned above, then you are instructed that you will not consider any evidence of any negotiations or conversations between plaintiff and defendant with reference to the conveyance made by said deed, transpiring before the execution of said written contract, for any purpose except as tending to prove, if you believe it does tend to prove, that after the execution of said written contract and before the execution of said deed, it was agreed by and between plaintiff and defendant that the due bill sued upon by plaintiff should be satisfied and canceled as a part of the consideration for said deed of conveyance to plaintiff by defendant."

Appellant requested the following instruction, which was refused: "You are instructed that in determining the question as to whether the payment and discharge of the due bill sued on was included in the deed of Johnson to Clements, you will consider all of the writings and facts and circumstances testified to and admitted before you in evidence."

In thus submitting the issues, which were determined by the jury in favor of appellee, the court evidently treated the preliminary contract of July 24th as *conclusive* showing that the parties did not, at and prior to the date of its execution, intend to include in the contemplated partnership dissolution and settlement the debt evidenced by the instrument declared on in this action. That this construction was erroneous is the main contention of appellant, which we proceed now to consider.

The general rule undoubtedly is that the parties to a written contract which appears on its face to be complete are conclusively presumed, in the absence of fraud, accident, or mistake, to have made the writing the depository of the entire contract, to the exclusion of all prior and contemporaneous negotiations and agreements within its scope but not included therein. But it is also a rule in the interpretation of contracts that the nature and subject matter thereof may be considered in determining their scope and effect.

We have before us a case in which partnership dissolution by mutual

consent was the subject matter of the contract. The debt in question was secured by a lien on the partnership assets, and was expressly made payable "according to the terms of said (partnership) contract." We are thus driven by the very terms of the contract sued on to the articles of partnership to find when and upon what condition the payment of the debt alleged was to be made. These being essential features of that contract, the partnership contract itself became a necessary part thereof. But the dissolution and settlement of the partnership put an end to the articles of partnership. Is it to be conclusively presumed, then, that a contract so made dependant upon the terms of the partnership contract was not intended to be affected by the dissolution of the partnership?

Certainly not. Turning to the partnership contract, we find that payment of the principal sum named in the instrument sued on was not to be demanded, except at the convenience of appellant, "until the revenues and profits of said firm business" would "justify the payment" thereof. This feature of the contract declared on, and hence the contract itself, would necessarily be affected by the disslution of the partnership contemplated and provided for in the July contract, it not being alleged or pretended that the revenues and profits of the firm business would justify its payment.

Inasmuch, then, as the preliminary contract of July 24th, when carried out, would have had the necessary effect of changing the contract upon which this suit is founded, it is not even a legitimate inference, much less a conclusive presumption, that in signing the July contract without mentioning that sued on the parties intended that the latter should not be affected. Nor can it be conclusively presumed from such silence in the July contract that the parties intended the contract sued on to be binding in a new form, for that would to presume from their silence that they intended to make a new contract. True, it seems to be laid down in works on the law of partnership that in cases of dissolution by the sale from on partner to the other, as in this case, if no mention is made in the contract of sale and dissolution of an individual debt due from the selling to the purchasing partner, it will be presumed that such individual debt was not to be affected by the partnership dissolution. But, on the other hand, it will be presumed that a debt due to the firm from the selling partner was intended to be extinguished. 2 Bates on Partnership, secs. 629, 630.

The reason of these rules is not far to seek. The individual debt due from the one partner to the other would not ordinarily be within the scope of the dissolution contract, while the debt due the firm would be. In the case before us, while the contract sued upon evidenced an individual debt, it contained also a partnership feature; that is, it was payable at the convenience of appellant or when the revenues and profits of the firm business would justify it, and was secured by a lien on the partnership assets. If it had been made payable alone at the convenience of appellant, it perhaps would not have been affected by the partnership dissolution. Had it been made payable alone out of the partnership

revenues and profits, the debt, though an individual one, would nevertheless have been extinguished by the dissolution, unless expressly reserved and kept alive in some other form by mutual consent.

We are therefore of opinion that, as the court could not determine from the preliminary contract for dissolution alone what the parties intended with reference to the debt in question, payable as it was according to the articles of partnership, it should have been left to the jury to determine from all the testimony before them, without the qualification contained in the first paragraph of the charge above quoted, whether or not that debt was intended to be extinguished by the partnership dissolution. That is, we sustain the contention of appellant that the special charge requested by him and quoted above should have been given in lieu of the quoted charges which were given. A just solution of this controversy seems to demand such a course of trial.

Upon still another ground at least a majority of us hold that the judgment be reversed, and that is for the error assigned to the court's action in overruling the demurrers to appellee's petition. No attempt was made by appellee to declare upon the clause of the instrument sued on which obligated appellant to pay it when it should be convenient for him to do so. There was not the semblance of allegation to meet that condition. Salinas v. Wright, 11 Texas, 72; Mitchell v. Clay, 8 Texas, 445; Rowlett v. Lowe, 43 Texas, 274; Carlile v. Hooks, 58 Texas, 420.

Nor is any such contention suggested in appellee's brief. The allegations of the petition as to the other clause of the instrument were quite as deficient and ineffectual. To make a case of liability under this clause, the petition must have shown that the revenues and profits of the firm business were such as to create a liability, according to the terms of the partnership contract. Not a single allegation was made to that effect. The recovery was sought upon the sole ground that the partnership had been "dissolved and abrogated by mutual consent," thereby rendering it impossible for the obligation sued on to be paid out of the revenues and profits of the firm business. We know of no authority for such a proposition, and certainly those cited in appellee's brief do not sustain it, for they are only to the effect that a person conditionally liable becomes absolutely so when by his own voluntary act he makes it impossible for the contingency to arise upon which his promise is conditioned.

The ground of liability in such case is a breach of contract, as is well illustrated by the California case cited, that of Wolf v. Marsh, 54 California, 228. In the case at bar no breach of contract was alleged, nor was any proven for that matter. A dissolution by mutual consent of a partnership is no more a breach of contract than is the formation of the partnership in the first instance. In one case the partnership is formed, in the other it is dissolved; but in both it is by contract and not by any breach of contract. Appellee could not with any show of reason claim that appellant was guilty of a breach of one contract for agreeing with him upon another to take its place. When both parties agreed to the

dissolution of the partnership a new contract was formed, but none was broken. This seems too plain for argument. Thus far we all agree.

·But it is insisted that appellant waived his right to complain of the ruling on demurrer by admitting the cause of action as alleged in order to acquire the right to open and conclude in the introduction of evidence and in argument, as provided in District Court rule No. 31. This rule requires the defendant who seeks to avail himself of this right, after the issues of law (erroneously termed therein issues of fact) are settled, to "admit that the plaintiff has a good cause of action as set forth in the petition, except so far as it may be defeated," etc. That is, he is required to admit the material issuable facts alleged and the legal consequences flowing from them, but no more. He is not required to admit a cause of action when none is set forth in the petition. It is only the cause of action as there set forth that he is called upon to answer in any manner, and no reason is perceived why he should be required to admit some other cause of action in order to secure the right to open and conclude upon the issues of fact involved in the one held on demurrer to be alleged, His first right and duty is to demur, if the petition fails to state a good cause of action. If the court errs in overruling the demurrer and requires him to go to trial upon the facts, he may reserve the point, as was done in this case, and should not be required to waive it in order to have a fair trial upon the issues of fact, which it was evidently the object of the rule to give. It would be fundamental error to enter judgment upon a petition which set out no cause of action, and it could not have been the purpose of the rule to require the defendant to waive such error. This view is adopted by at least a majority of ·us. For the reason indicated, the judgment is reversed and the cause remanded for a new trial.

*Reversed and remanded.*