TEXARKANA LUMBER COMPANY v. F. M. LENNARD.

Decided June 22, 1907.

**1.—Contract—Agency.**

In a letter by a saw mill company proposing to a physician that he move to the saw mill for the purpose of giving such medical attention to the employes and their families as they might need, the language, "we will collect for you one dollar from all single employees and one dollar and fifty cents from all employees with families on the mill grounds, etc.," when properly and fairly construed in the light of the evident intention of the parties and the purpose of the mill company to subserve its own interest, as appeared from the whole letter, imported an absolute promise on the part of the mill company to pay such sums, and not merely to act as agent in the collection of the same from the employees.

**2.—Breach of Contract—Damages.**

In a suit for damages for breach of a contract of employment, evidence considered, and held to sustain the judgment.

**3.—Contract—Statute of Frauds.**

Where, upon the face of a contract, a contingency is expressed which might happen within the space of one year and the contract be thereby fully performed, such contract is not obnoxious to the statute of frauds.

Appeal from the District Court of Bowie County. Tried below before Hon. P. A. Turner.

*Hart, Mahaffey & Thomas,* for appellant.—No action shall be brought in any of the courts upon any agreement which is not to be performed within the space of one year from the making thereof unless the agreement upon which such action shall be brought, or some memorandum, shall be in writing and signed by the party to be charged therewith, or by some person by him thereunto lawfully authorized.

When by the statute of frauds an alleged contract or some memorandum thereof is required in writing, and it is sought to comply with the statute of frauds by the production alone of a written memorandum, the memorandum produced must contain all of the essential elements of the contract alleged and must be consistent therewith. Watson v. Baker, 71 Texas, 739; Munk v. Weidner, 9 Texas Civ. App., 491; Biest v. Ver Steeg Shoe Co., 70 S. W. Rep., 1081; Zanderson v. Sullivan, 91 Texas, 499; Fulton v. Robinson, 55 Texas, 404; 11 L. R. A., 97 and 143; Browne on Stat. Frauds, secs. 370 to 396.

The court erred in deciding that as a part of the contract alleged by the plaintiff there was not an implied obligation on his part, that his services as a physician and surgeon should be and remain, during the term of such contract, satisfactory and acceptable to defendant's employees at Draper, Texas. House v. Faulkner, 61 Texas, 311; Miller v. Gulf, C. & S. F. Ry. Co., 65 Texas, 659.

*Chas. S. Todd,* for appellee.

TALBOT, ASSOCIATE JUSTICE.—This suit was instituted by the appellee, Lennard, against the Texarkana Lumber Company, to recover the sum of eighteen hundred dollars as damages alleged to have been sustained by him on account of the breach of a contract. The case was before this court on a former appeal, the judgment of the lower court sustaining the lumber company's plea of the statute of frauds by demurrer being reversed and the cause remanded for trial. See 94 S. W. Rep., 383. At the fall term, 1906, of the District Court, the case was tried by the court without a jury and judgment rendered for appellee, in the sum of $849, from which the lumber company has appealed.

The appellee was a practicing physician residing in Miller County, Arkansas, and the appellant a private corporation operating a saw mill at Draper, Bowie County, Texas, employing a large number of

men who were required to and did reside at and near the mill with their families. There was no town other than the mill settlement and no physician resident there. It was necessary, and the custom in the operation of such mill was, to employ a physician to reside there, or be near at hand, to give medical aid and attention to the employees, and pay such physician either a salary or certain fees apportioned per capita among the employees. On the 8th day of October, 1903, the appellant, through its superintendent and authorized agent, wrote and delivered to appellee, by due course of mail in an envelope directed in writing to Dr. F. M. Lennard, the following letter or instrument, to wit:

Draper, Texas, 10-8-03.

Dr. F. M. Lennard,
    Boggy, Ark.
    Dear Sir—I am sorry I was not here the other day to meet you; will say we will collect for you $1.00 from all single employees, and $1.50 from all employees with families on the mill grounds; employees living in the country you will receive $1.00 from head of families, and for services for balance of families you will only charge half regular rates; we will furnish you with office building and barn and lot. Our Mr. Welch says we will do well to get you, as you have been at Boggy several years and know what saw mill practice requires, and thinks you would be the man we want. We want some one who will stay with us until we cut out, as we will only be here about two years. If these terms suit you, you can come over and see me and make your arrangements to come with us.
                                        Yours very truly,
                                            C. E. Patton, Supt.

Dr. Lennard, the appellee, received the foregoing letter, accepted the proposition therein contained, and about December 1, 1903, removed to appellant's mill and entered upon the performance of his duties, the appellant furnishing him an office building, barn and lot, as stipulated in said letter. Appellee continued to render medical services to the employees of appellant, receiving from appellant his compensation therefor under the terms of the letter or contract mentioned, except for the month of June, until July 1, 1904, when appellant refused to longer pay him for his services or furnish him an office, and discharged him.

Appellant presents several assignments of error, but we shall not notice them in detail. The questions raised will be sufficiently indicated without stating each assignment and discussing them separately.

The court did not err in rendering judgment in favor of appellee for the sum of eight hundred and forty-nine dollars. The contract, for the breach of which appellee sought to recover, did not simply bind appellant as an agent to collect from its employees and pay over to appellee, monthly, the sums therein specified. The language of the letter, "We will collect for you one dollar from all single employees and one dollar and fifty cents from all employees with families on the mill grounds," etc., properly and fairly construed "in the light

of the evident intention of the parties" and the purpose of appellant to subserve its own interest, as appears from the whole letter, clearly imports an absolute promise on appellant's part to pay such sums. The benefits to accrue to appellant from appellee's medical services to its employees furnished a good reason and ample consideration for the assumption by it of the obligation claimed, the breach of which by the wrongful discharge of appellee, rendered appellant liable for such damages as he sustained thereby. In addition to the language of the letter itself, tending to establish an absolute undertaking by appellant to pay appellee for his services the sums of money specified in said letter, it was shown without dispute that on November 9, 1903, after said letter had been written and mailed to appellee, appellant posted on its store door the following notice: "Draper, Texas, Nov. 9, 1903. We have engaged Dr. Lennard as physician for this place commencing December 1, 1903. All single men will be charged $1.00 and married men $1.50 per month doctor's fees. The doctor will furnish all medicines, excepting tonics. Texarkana Lumber Co., C. E. Patton, Supt."

The contention that the undisputed evidence showed that appellee had not sustained damages in the amount awarded by the court, is not tenable. He proved without contradiction that his services, under the contract, would have been required for not less than eighteen months after his discharge, and that his average earnings, exclusive of the office and stable, per month for the six months he was at the mill, measured by the number of men employed, and the proportion that were married and single, was $90.20. His gross average earnings per month for the eighteen months succeeding his discharge by appellant, was $56, out of which he had to pay office rent $15 per month, leaving $41 per month net. This latter amount deducted from $90.20 shows that his loss per month for the said eighteen months was $49.20. The judgment allows him, without interest, a total of $849, which is a very small fraction over $47 per month. In rebuttal of this evidence appellant's vice-president, Fuqua, testified that after appellee left Draper, that is, for the remainder of the year, 1904, after the first day of July he thought appellant "may have worked" at the mill an average of thirty-five men per month; that during the year 1905 he did not think they had employed on an average of more than thirty men per month, and that he thought about one-half of these men were married and the remainder single. The testimony of this witness upon the subject is indefinite and uncertain. It is apparent that his statement, as to the number of men and the proportion that were married and single, was largely, if not altogether, conjecture or guesswork. In this state of the evidence the court was authorized, in the exercise of his province to weigh it, to render the judgment he did. The evidence by which the exact number of men, married and single, engaged at appellant's mill during the eighteen months immediately following appellee's discharge, was peculiarly, if not necessarily, within the knowledge and possession of appellant, and if a less number were employed during that time than during the six months appellee was there, it was within the power of appellant to produce the proof of that fact, and having

failed to do so, there was sufficient evidence to show, with reasonable certainty, that appellee sustained damages by the breach of the contract in the amount of the judgment rendered.

The further contention of appellant to the effect, that the contract, for the breach of which appellee sues, is one which could not be performed within a year and is not evidenced by a sufficient memorandum in writing to take it out of the statute of frauds, should not be sustained. This contention of appellant was practically decided against it on the former appeal of this case. The subject was then carefully investigated and considered, and our views upon it fully expressed. The amended. pleadings of appellee do not materially alter the case, and no sufficient reason is shown why we should not adhere to the conclusion then reached. The writing relied on by appellee as evidencing the contract is set out *in haec verba*, and, as we said in our former opinion, "in such case the proper decision of the question depends upon the very terms of the contract itself or a reasonable interpretation thereof, and can not be controlled by inconsistent allegations therewith." Construing this contract, and citing authorities in support of the conclusion reached, we then held, and now reaffirm, that there is, clearly, a contingency expressed upon its face which might have happened within the space of one year from its date and the contract thereby fully performed, hence not obnoxious to the statute of frauds. See Lennard v. Texarkana Lumber Company, 94 S. W. Rep., 383.

Finding no reversible error in the record the judgment of the court below is affirmed.

*Affirmed.*

Writ of error refused.