STONE v. ROBINSON et al. (No. 838.)

(Court of Civil Appeals of Texas. Amarillo. Oct. 30, 1915. Rehearing Denied Nov. 27, 1915.)

1. CONTRACTS ☞143—CONSTRUCTION.

In construing a contract the court must seek the parties' intention from the words used, the subject-matter, and the purpose of the agreement, placing itself, if the intention is not clearly expressed, in the position of the parties, and then, from a consideration of the instrument as a whole, in the light of all circumstances, endeavoring to reach its real meaning, reconciling clauses apparently in conflict, if possible, to render the agreement fair, customary, and such as reasonable business men would execute.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 723, 743; Dec. Dig. ☞143.]

2. VENDOR AND PURCHASER ☞267—VENDOR'S LIEN—RELEASE.

Where the vendor of 40 acres to be divided into lots by the buyer and sold, being about to be much absent from the state, executed a power of attorney to a third person, it being stipulated in the power that, if at any time the buyer should pay to the vendor or a bank for his credit the sum of $30 per lot, the vendor should release the lot from his lien, a subsequent clause providing that the attorney also might and should execute releases for any lots when the buyer should make the payment, "except the lots or plot of ground on which is situate the house," which house was worth $1,500, a construction of the power of attorney that it required the vendor, if requested, to release the four lots upon which the house, worth $1,500, was located, upon the payment of $30 per lot, was improper, rendering the contract unfair, not customary, and not such as prudent business men would naturally execute, tending to render the specified clauses of the power repugnant, and the contract inequitable to the vendor. A proper construction of the phrase "except the lots or plot of ground on which is situate the house" was that it was equally applicable to the vendor or his attorney, and required neither to release the lots on which the house stood.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 751–758; Dec. Dig. ☞267.]

Appeal from District Court, Lubbock County; W. R. Spencer, Judge.

Action by John B. Stone against Jim Robinson, Jr., and others. Judgment for plaintiff, and he appeals on an agreement made under Rev. St. 1911, art. 2112. Reversed and remanded.

Bean & Klett, of Lubbock, for appellant. Benson & Spencer and Jas. R. Robinson, all of Lubbock, for appellees.

HALL, J. September 9, 1909, J. B. Stone executed the following power of attorney: "The State of Texas, County of Lubbock.

"Whereas, I, J. B. Stone, joined by my wife, Barbara Stone, did this day convey to Jim Robinson, Jr., the northwest one-fourth of the southwest one-fourth of survey No. 7, in block B, located by virtue of land script No. 307, issued to T. T. Railway Co., and patented to Z. J. Brown, assignee, and situated in Lubbock county, Texas; and,

"Whereas, the said Jim Robinson, Jr., has surveyed the same in lots, streets, and alleys and has published the same as the Robinson addition to Lubbock, dedication the streets and alleys to the public for public use; and,

"Whereas, to secure part payment of the consideration of said sale, said Jim Robinson, Jr., has executed and delivered to me his two certain vendor's lien notes of this date, each for the sum of $3,500.00, maturing on or before one and two years from date respectively; and,

"Whereas, the said Jim Robinson, Jr., is selling and disposing of said lots, and it is agreed and understood by and between us that at any time the said Jim Robinson, Jr., shall pay or cause to be paid to me or the Lubbock State Bank for me the sum of $30.00 per lot in said addition, then the same shall be released from the vendor's lien executed to secure the payment of said notes, and I hereby delegate myself so to do; and,

"Whereas, I, the said Stone, contemplate being absent from the state a great deal of my time, and in order to carry out our understanding as aforesaid without delay, I, J. B. Stone, of the county of Lubbock and state of Texas, have this day made and constituted and appointed, and by these presents do make, constitute, and appoint, W. S. Posey, of the county of Lubbock, state of Texas, my true and lawful attorney in fact, for me and in my name to execute releases from the vendor's lien existing as aforesaid on any lot or lots in said addition, when the said Jim Robinson, Jr., or his assigns or vendees shall pay or cause to be paid to the Lubbock State Bank of Lubbock, Texas, the sum of $30.-00 per lot, except the lots or plot of ground on which is situate the house for my credit with said bank; and I further authorize the said Posey or said bank to receive from the said Jim Robinson, Jr., any sum or sums of money that said Robinson, Jr., or his vendees or assigns may pay or cause to be paid to said bank, to be applied on said two $3,500.00 notes, and when said notes, or either of them, is fully paid off by money deposited in said bank to my credit, to execute and deliver proper and sufficient release therefor.

"Hereby ratifying and confirming any and all acts by my said attorney in fact lawfully done in and about the premises as fully as if I were personally present and acting for myself.

"Witness my hand at Lubbock, Texas, this September 9, 1909."

This instrument was duly acknowledged and filed for record on the same day.

Appellant brought suit to recover the balance due on the two $3,500 notes described in the foregoing instrument and to foreclose the lien reserved in the deed therein mentioned upon a large number of lots, including the four lots upon which the house mentioned in the foregoing instrument was situated. A number of vendees of Jim Robinson, Jr.,

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

were made parties to the suit, but personal judgment was sought against Robinson only; the appellant praying for a foreclosure of the lien as to all of the defendants. The case is before us upon an agreement made in accordance with article 2112, R. S., in which it is stipulated:

"That the point at issue in this case and the appeal thereof is whether the court, in trying this case, properly construed the meaning and legal effect of the power of attorney given by plaintiff to W. S. Posey."

The judgment of the court was in favor of the plaintiff against Jim Robinson for the sum of $4,450.61, balance due on the two notes and foreclosing the vendor's lien as against all of the defendants upon certain lots not necessary to be mentioned here. It appears that the four lots in question had been conveyed to James Scott and wife by Robinson, and, the court having instructed the jury to return a verdict against the foreclosure of appellant's vendor's lien upon said lots, judgment was entered accordingly. The only complaint made here is of the failure of the court to foreclose the lien upon said four lots.

The facts proven upon the trial and set out at length in the agreement are, in substance, as follows: Prior to September 9, 1909 (the date of the execution of the power of attorney), J. B. Stone was the owner of 40 acres of land near the town of Lubbock, and on said date, joined by his wife, he conveyed the same to Jim Robinson, Jr., by warranty deed, retaining the vendor's lien to secure the payment of the two notes sued upon. At the time of the sale Stone knew that Robinson intended to subdivide the land into blocks, lots, streets, and alleys and make the same an addition to the town of Lubbock, and to place said lots upon the market for sale. W. S. Posey was agreed upon as the party who should act for Stone in receiving payments for the lots, crediting the amounts upon the two notes and in executing releases. Stone, Robinson, and Scott relied upon the power of attorney set out above as evidencing the agreement between Stone and Robinson with reference to payments and releases. Scott and wife had no knowledge of any agreement between Stone and Robinson with reference to releasing the lien upon lots in said addition, except the notice given them by the recordation of the power of attorney. The lots mentioned in the power of attorney and upon which the house was situated are the same as lots 8, 9, 10, and 11 in block 4, and are the premises upon which the James Scott residence is located. At the date of the sale from Stone and wife to Robinson the residence was situated on said land, and is still there. That it is in good repair. That it is the house referred to in the power of attorney and is valued at $1,500. By mesne conveyances Scott and wife acquired the land from Robinson, Jr., and took possession of the land, occupying the house thereon. None of the subvendees of Robinson had any conversation with Stone before purchasing said property with reference to Stone executing or authorizing any one else to execute releases to said lots upon payment of $30 per lot, or any other sum. After the sale and the execution of the power of attorney Robinson sold about 45 lots, turning the proceeds, amounting to $1,320, over to Posey, which amount was duly credited on the notes held by Stone and a release of the vendor's lien on said lots was duly executed. Thereafter, and before this suit was filed, Robinson made further payments, aggregating about $2,200, which were by Posey and Stone credited upon the notes. After the institution of the suit, and before the defendants had answered, Robinson designated, among others, as lots he wished released from plaintiff's lien, the four lots hereinbefore mentioned, being the property upon which the house was situated. Stone refused to release said four lots or permit Posey to release them, unless Robinson would pay the balance due on the two $3,500 notes.

[1] In construing a contract, the cardinal rule is to ascertain the intention of the parties. Their intention is to be ascertained from the words used, the subject-matter of the contract, and the purpose of its execution. If the intention is not clearly expressed in the writing, the court should, as far as possible, place itself in the position of the parties when their minds met upon its terms, and then, from the consideration of the instrument as a whole, in the light of the surrounding circumstances, endeavor to arrive at its real meaning. If the instrument contains clauses apparently in conflict, they should be reconciled, if it can be done by a reasonable interpretation; that is, "such a construction as will make the agreement fair, customary, and such as prudent business men would naturally execute." The court should not construe a contract uncertain in its terms or one containing apparently repugnant clauses so as to render it inequitable or oppressive to either party in its operation, if such a construction can be avoided, because it will not be presumed that the parties intended to enter into a contract which is unjust or inconsistent in its terms. Effect must be given to every part, and the whole be permitted to stand, if possible. Johnson v. Clements, 23 Tex. Civ. App. 112, 54 S. W. 272; Cleburne Water, etc., Co. v. Cleburne, 13 Tex. Civ. App. 141, 35 S. W. 733; San Jacinto Oil Co. v. Ft. Worth Light, etc., Co., 41 Tex. Civ. App. 293, 93 S. W. 173; Texarkana Lumber Co. v. Lennard, 47 Tex. Civ. App. 116, 104 S. W. 506; Tittle v. Vanleer, 89 Tex. 174, 29 S. W. 1065, 34 S. W. 715, 37 L. R. A. 337; McHugh v. Gallagher, 1 Tex. Civ. App. 196, 20 S. W. 1115; Smith v. Brown, 66 Tex. 543, 1 S. W. 573; Knapp v. Patterson, 99 Tex. 400, 90 S. W. 163; Moore v. Waco, 85 Tex. 206, 20 S. W. 61; Linch v. Paris Lumber Co., 80 Tex. 23, 15 S. W. 208;

Faulk v. Dashiell, 62 Tex. 642, 50 Am. Rep. 542; Linton v. Brownsville Land Co., 46 Tex. Civ. App. 225, 102 S. W. 433; Whitis v. Polk, 36 Tex. 602; 2 Elliott on Contracts, §§ 1508, 1514, 1517; 2 Page on Contracts, § 1113; 6 R. C. L. "Contracts," §§ 225, 226, 227, 236, 239, 241.

[2] In one clause of the power of attorney it is stipulated that, if at any time Robinson shall pay or cause to be paid to Stone or to the bank for the credit of Stone the sum of $30 per lot, the same shall be released from the vendor's lien. A subsequent clause provides that Posey, as attorney in fact for Stone, shall execute releases for any lots when Robinson or his vendees shall pay or cause to be paid to the bank for the credit of Stone the sum of $30 per lot, "except the lots or plot of ground on which is situate the house."

Appellees argue that, according to the wording of these clauses, Stone could be compelled to release any lot upon payment of $30, and Posey could release any lot except the ones upon which the house was built. We can conceive of no reason for a limitation upon the power of Posey to do a thing which his principal might be forced to do at any time, and appellees suggest none. The fallacy of this contention is emphasized by a provision in the last clause which authorizes Posey, equally with the bank and Stone, to receive any sums of money from the purchasers of any of the lots.

The court filed no findings of facts or conclusions of law, but in the record it is agreed:

"As a fact that the court did construe the meaning and legal effect of said power of attorney to be that upon the payment by Jim Robinson, Jr., of $30 per lot (or $120) on the note sued on, and the designation of said lots as the ones he desired released, that he was entitled to have them released from appellant's vendor's lien, and that the payment of said sum of money and designation of said lots or tract of land canceled the lien on said lots or tract of land, although there was at the time of the payment and time of the trial of the cause a large sum of money due on each of the notes sued on; and the court further held that the said power of attorney did not provide or mean that the said lots or tract of land were to be excepted from the right of being released upon payment of $30 per lot, and designating them to be released until the whole amount due on the notes given by Jim Robinson, Jr., to J. B. Stone should be paid."

The evident purpose of the contract was to enable Stone to dispose of his 40 acres of land and improvements upon such terms as would permit Robinson to pay for it by the sale of lots into which the tract should be subdivided. In order to facilitate the sale it was stipulated that Robinson might have any number of lots released from the lien by a payment of $30 per lot. From a reservation of the vendor's lien and retention of the superior title in Stone the fair and necessary inference is they intended that Stone should be at all times amply secured. The record does not disclose the total number of lots

nor the full consideration named in the deed. However, appellees' construction of the contract would have permitted Robinson to first sell and have released the four lots upon which the house, worth $1,500, was located by the payment of only $120. Such an amount would not, of course, be a fair consideration for the house and lots, and the release of them from the lien would seriously impair the value of the security. The fact that several years elapsed between the date of the sale of the lots in question by Robinson and the demand by him for their release, and the further fact that the demand was not made until after this suit was filed, may be taken as a practical construction of the contract by Robinson himself in favor of appellant's contention. If we place ourselves in the position of the parties at the time the contract was executed, we find Robinson purchasing property for which he did not, and possibly could not, pay all cash. Manifestly, after subdivision, the lots, with the house upon them, would be, when compared with a like number of vacant lots, the most valuable and desirable portion of the contract. The sale value of the remaining lots to Stone was estimated at $30 each. Their total value at $30 apiece, added to the value of the four improved lots, made up the entire consideration for the conveyance. To place such a construction upon the contract as would enable Robinson to first dispose of the most valuable and salable part of the entire tract for an inadequate consideration moving to Stone does not, in our opinion, "make the agreement fair, customary, and such as prudent business men would naturally execute." Such an interpretation would tend to make the two clauses repugnant and render the contract inequitable to Stone. To construe the phrase "except the lots or plot of ground on which is situate the house" as being equally applicable to Stone and Posey is consistent with reason and equity, as well as the practical construction which we think has been placed upon the contract by the parties themselves.

In the light of the record before us, we are of the opinion that the trial court erred in its construction of the contract, and the judgment will therefore be reversed. It appears, however, that the facts have not been fully developed, and the cause will be remanded.

Reversed and remanded.