Appellant's many criticisms levelled at the court's charge are without merit.

The judgment is affirmed.

PER CURIAM.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

**WEST PRODUCTION CO. v. SOUTH-WESTERN BELL TELEPHONE CO.**

No. 10679.

Court of Civil Appeals of Texas. Galveston.

Dec. 22, 1938.

Rehearing Denied Jan. 19, 1939.

Platt, West & Stevenson and J. A. Platt, all of Houston, for appellant.

John H. Bickett, Jr., and C. M. Means, both of Dallas, and C. E. Coolidge, of Houston, for appellee.

GRAVES, Justice.

This condensed general statement, thought to be correct as such, is taken from the appellee's brief:

"This is a suit whereby the appellant (plaintiff in the district court), seeks by mandatory injunction to require the appellee (defendant in the court below), to restore a telephone circuit to a pole-line belonging to the appellant and from which pole-line appellee removed the circuit in August, 1936, and to furnish appellant with telephone service over such restored circuit, appellant alleging that appellee—by a contract with appellant—agreed to maintain such circuit on appellant's poles and to furnish telephone service to appellant through such circuit, and that the removal of the circuit from appellant's poles and the furnishing of telephone service to appellant through a circuit on another pole-line was a violation of said contract, to the irreparable injury of the appellant. In the alternative, appellant prayed for damages.

"A trial before the court, without a jury, resulted in a judgment that appellant take nothing by its suit, to which judgment of the court appellant excepted and gave notice of appeal."

At appellant's request, the trial court filed findings of both fact and law in support of its judgment, in substance as follows:
"Findings of Fact.

"1. About May, 1935, plaintiff was and still is engaged in the * * * production of oil and gas in the Mykawa Oil Field and approximately four miles beyond and south of the City limits of the City of Houston; at said time the defendant was the owner of a telephone system in the City of Houston and was engaged in the furnishing of telephone service through such system and the exchanges, constituting a part of such system, to the public generally at uniform established rates.

"II. Plaintiff, desiring to secure telephone service at the field-office maintained by it in said oil field with and through the telephone system and exchanges being operated by the defendant in the City of Houston, entered into negotiations with the defendant for such service. At and during the time of said negotiations and at all times subsequent thereto down to on or about August, 1936, plaintiff's said field-office was approximately three miles beyond the nearest construction, that is, poles and wires, owned and used by the defendant in connection with its Houston telephone system and exchanges. And at said time and at all times thereafter until on or about August, 1936, the construction and maintenance of a line of poles from the airport on Telephone Road (to which point defendant's pole-line wires extended at that time) to plaintiff's field-office in the Mykawa Oil Field and the stringing and maintenance of a circuit of wires on said poles, was necessary in order that the plaintiff might secure and the defendant might furnish the telephone service desired by the plaintiff.

"III. The negotiations * * * culminated in an agreement between the parties as to the character of telephone service to be furnished and as to the rate and as to the construction and maintenance of the facilities then necessary to connect plaintiff's field-office by means of a telephone circuit to defendant's then nearest circuit at the airport. At the conclusion of such nego-

tiations and in confirmation of the agreements reached, the defendant on May 23, 1935, wrote to the plaintiff the letter set out in full on page 2 and 3 of plaintiff's original petition and in reply to said letter of the defendant, plaintiff on June 7, 1935, wrote the defendant the letter set out in full on the bottom half of page 3 of plaintiff's original petition.

"IV. Thereafter, at its own expense, the plaintiff secured the permission of the State Highway Department and of the Commissioners' Court of Harris County to place the necessary poles on the west side of the right of way of the State Highway known as Telephone Road from the airport to the junction of said road with the Mykawa County Road and thence west along the north side of the Mykawa County road to a point opposite its property in the Mykawa Oil Field, and erected a pole-line along said route and to its field-office in the Mykawa Oil Field. The pole-line so erected was sufficient in every particular to meet the specifications furnished it by the defendant and was approved by it as to construction. Thereafter, defendant, furnishing all of the material and labor necessary therefor, placed a circuit of wire on the poles so erected by the plaintiff and connected said circuit into its construction at the airport and into plaintiff's field-office in the Mykawa Oil Field, and established telephone service to the plaintiff at said office into and through its telephone system and central offices in the City of Houston.

"V. Plaintiff paid to the defendant the sum of $350.00 as the agreed cost of the labor and material necessary to place the telephone circuit on its poles and thereafter from month to month, from said time down to this date, has paid to the defendant the monthly rate of $17.15.

"VI. On or about August, 1936, the defendant received an application from the Department of Commerce, U. S. Government, for service to a radio-beacon station located out Telephone Road and about two and one-half miles east of the point where said road intersects the Mykawa County Road, and the furnishing of which necessitated the use of a pole-line from the airport out said Telephone Road to the junction with the Mykawa County Road. To furnish such service, it became necessary for the defendant to extend its pole-line south from the airport along the east side of Telephone Road to the junction of the Mykawa Road and thence east to the said radio-beacon station, and the defendant did so extend its pole-line, the Department of Commerce paying the cost of said new construction, the defendant to own and maintain the same. The newly erected and owned pole-line of the defendant paralleled the pole-line erected by the plaintiff from the airport out Telephone Road to its junction with the Mykawa County Road, and on the completion of such extension of its pole-line, the defendant placed thereon a telephone circuit from the airport to the junction of the Mykawa County Road and connected said circuit into the circuit which had theretofore been used in furnishing plaintiff telephone service, at the airport and at the junction of the Telephone Road with the Mykawa County Road, and it thereupon, without notice to and without the knowledge or consent of the plaintiff, commenced furnishing the plaintiff telephone service through the circuit placed on its own poles between said two points and it removed the circuit from plaintiff's poles between said two points.

"VII. The sole and only purpose and object of the negotiations and agreement entered into by and between the plaintiff and the defendant in May, 1935, was the securing by the plaintiff of unlimited individual line telephone service to be furnished it at its Mykawa Oil Field Office into and through defendant's Houston Telephone system and exchange at that time. The placing of defendant's circuit on plaintiff's pole was only an immaterial incident of the main object of the contract and made necessary at the time by reason of defendant's at that time having no pole-line beyond the airport in the direction of plaintiff's Mykawa Field Office.

"VIII. The monthly rate of $17.15 charged by the plaintiff by the defendant for telephone service was and is the uniform established rate charged subscribers generally by the defendant for telephone service of the character furnished to the plaintiff at locations situated the same distance beyond the City Limits of the City of Houston as is plaintiff's Mykawa Field Office. That such rate is. the applicable rate regardless of whether the pole-line carrying the necessary circuit is owned and erected by the defendant or is owned and erected by the subscriber. The $350.00 paid by the plaintiff to the defendant was not only the stipulated cost but the actual cost to the defendant of

the labor and material necessary to place the circuit on plaintiff's poles.

"IX. The defendant has at all times continued and is now furnishing the kind and character of telephone service applied for by the plaintiff. The pole-line on which defendant has placed a portion of the circuit removed from plaintiff's pole-line is owned and controlled by the defendant and said pole-line is in every respect adequate to support the circuit furnishing plaintiff telephone service as well as such additional circuits as are now or will hereafter be placed thereon, if any. The wire used in the circuit placed on defendant's poles is of the same material, size, and length as was the wire used in the circuit placed on plaintiff's poles. The service furnished since the change in location of the circuit used in furnishing the same from a portion of plaintiff's poles to poles belonging to the defendant has been, is now, and in the future will be just as efficient, private, unlimited, and as secure against failure and interruption as was the service furnished prior to said change in the location of the circuit.

"X. Defendant has never threatened and is not now threatening to discontinue the furnishing of telephone service to plaintiff at its Mykawa Field Office, and it has no intention of discontinuing the furnishing of such service so long as plaintiff desires same and is willing to pay the uniform established rate therefor and to maintain the poles still necessary to carry the circuit from plaintiff's Field Office to the poles of the defendant now terminating at the junction of Telephone Road and Mykawa County Road.

"XI. Plaintiff sustained no damages as a result of defendant's changing the furnishing of service to it from the circuit on plaintiff's poles to the circuit on defendant's poles and removing the wire, brackets, and insulators constituting and supporting the circuit, from the poles of the plaintiff along Telephone Road from the airport to its junction with the Mykawa County Road.

"XII. Defendant can more efficiently and economically maintain, that is, inspect, repair and keep in good working order, the circuit used to furnish plaintiff service with the same on the poles owned by it and on which it has other circuits than it could with the same on plaintiff's poles.

"XIII. No additional cost or expense for telephone service is or will be imposed on the plaintiff by the change made in the means now used by defendant to furnish plaintiff service.

"Conclusions of Law.

"I. I construe the agreement had by and between the plaintiff and the defendant to be one whereby the plaintiff sought to secure unlimited individual line telephone service to be furnished at its field office in the Mykawa Oil Field into and through the defendant's Houston Telephone system and exchanges, and that by the terms thereof the defendant agreed to furnish such service to the plaintiff at the monthly rate stipulated on the basis of facilities being erected and in place necessary for the furnishing of such service.

"The agreement had by and between the plaintiff and the defendant with reference to the pole line and the placing of the necessary circuit on the pole line and as to who should perform such work and stand the cost thereof was only incidental and preliminary to securing immediate installation of telephone service to the plaintiff by the defendant at that time. Such agreement was no material, substantial part of the agreement finally culminated whereby plaintiff was to secure such telephone service immediately.

"I construe the contract finally arrived at as in no manner obligating the defendant to furnish telephone service through the circuit on plaintiff's pole after it had extended its pole line and could just as efficiently furnish the service it was obligated to furnish through a circuit placed on its own poles.

"Under the express agreement of the parties with reference to the circuit, the circuit was to be owned by the defendant. The word 'maintenance', used in the last sentence of the sixth paragraph of defendant's letter to the plaintiff, was without any doubt used in the sense of 'upkeep, inspection, and repair, etc.' and the whole sentence simply imposed upon the defendant the duty of bearing the cost of the inspection, repair and upkeep of the circuit used to furnish the plaintiff telephone service, and was never intended to obligate the defendant to leave the circuit on plaintiff's poles. I find nothing in the negotiations leading up to the exchange of letters, nor in the letters, nor in the circumstances under which the contract was made which, expressly or by implication, imposed upon the defendant the obligation to leave the circuit attached to plaintiff's poles, and prohibit it from removing the circuit from plaintiff's poles and placing it on other adequate poles of its own when they were available.

"II. Under the facts found by me and under the contract as I construe it, I conclude that the defendant had a right to furnish plaintiff telephone service over a circuit a portion of which it placed on its own poles, and I conclude that the defendant had a right to remove a portion of the old circuit, and the pins, brackets and insulators supporting the same, from plaintiff's poles at the time and under the circumstances it did do so.

"III. I conclude that no right existing in the plaintiff by virtue of the terms of the contract and the circumstances of the case has been violated by the defendant.

"IV. I conclude that under the contract and the circumstances of the case, it is the obligation of the defendant to furnish telephone service to plaintiff at its Mykawa Field Office into and through its Houston telephone system and exchanges so long as plaintiff pays the uniform established rate therefor and maintains such of its poles as are necessary to reach defendant's pole line. as now extended, and that no threatened breach of defendant's obligation as thus construed is shown."

The two letters thus referred to, and which appellant contends embodied and confirmed the agreement it so declared upon and sought to have specifically enforced by the aid of a mandatory injunction, were these:

"Houston, Texas, May 23, 1935.

"Dear Mr. West:

"This will confirm our recent conversation with you regarding the provision of telephone service to your oil field near Mykawa.

"The nearest point of connection to secure Houston Exchange service is on the Telephone Road near the airport. On the basis of furnishing service for one individual line business telephone, the following monthly rate will apply:

"1. Individual business line with hand set .................... $ 9.15
2. Mileage charge .............. 8.00

Total Monthly rate........ $17.15

"At the above rate dial service will be furnished through the Wydown central office and will entitle you to Houston unlimited local service.

"We understand you contemplate building a pole line from the oil field to a point on the Telephone Road near the airport which will connect with our lines, and that two different routings are considered.

"It is agreeable to us for you to place a pole line construction at your own expense in accordance with specifications which have been furnished. The ownership and maintenance of the pole line remains with you.

"We will furnish and place on your poles the circuit, including brackets and insulators at a cost to you of $300.00 if the proposed cross country routing is used or $350.00 if the proposed routing along the Telephone and Mykawa roads is used. All right of way to be obtained and furnished by you. Ownership and Maintenance of the circuit will remain with us.

"Should you wish further information, please let us know.

"Yours very truly,
"F. G. Cassara, Manager."
"June 7, 1935.
"Southwestern Bell Telephone Company,
"Houston, Texas.
"Gentlemen:

"This is to advise that we accept your proposition as outlined in your letter of May 23, 1935, with reference to telephone service to the oil field near Mykawa. We have elected to route the line over the roads, and we will consequently owe you the sum of $350.00 upon the completion of the line and the installation of the phone and the inauguration of satisfactory telephone service. Upon being billed for this amount, after the service is begun, we will make remittance within the customary time. The $17.-15 monthly rate will, of course, be paid as other customers pay, from month to month as the bills are rendered. It has been our verbal understanding with you, and we here now wish to state in writing, that there shall be no other lines strung on our poles or connected with the line furnishing us service, without our consent in writing is first obtained. It is very important that no connections be made on the line furnishing us service that would affect the privacy of our conversations over this line.

"Yours very truly,
"West Production Company,
"J. Marion West, President."

None of the fact-findings have been attacked as lacking support in the evidence, nor could they successfully have been, in view of the clear sufficiency of the testimony to sustain all of them; however, appellant

in this court apparently assuming, notwithstanding the directly contrary determination as so made on the facts by the trial court, that "the undisputed evidence showed that appellee voluntarily and freely contracted to maintain the circuit on appellant's poles", since the cost of constructing such pole-line and installing a circuit thereon had all concededly been paid for by it, insists the trial court erred in not requiring appellee to specifically perform such an agreement and to peremptorily require it to restore to and maintain the circuit on appellant's poles.

That contention goes to the heart of the appeal, and if it be unsound, as this court concludes it plainly is, then nothing is left for review.

The alternatively declared upon claim for damages falls with that for specific performance, because the latter alike is solely bottomed upon the same contention as to what the contract was, together with the added declaration that such an agreement to continue maintaining the circuit on appellant's pole-line had been breached by the appellee.

Recurring to the court's finding as to the contrary effect of the contract as made, it will be noted that appellant's construction materially if not mainly rests upon the concluding two sentences of its answering letter of June 7th to appellee's of May 23rd, as quoted supra; but a careful study of the testimony, together with the court's unquestioned findings thereon, shows that neither of the specifically stated understandings in these two sentences was shown or found to have been violated; that is, it neither appeared that there had been any other lines strung along appellant's poles, nor that any other connection had been made on the line furnishing its service that affected the privacy of its conversations over its line.

■■■ Not only were the court's fact-findings so unquestioned, but it further appears that the evidence from which they were drawn had been admitted without objection; wherefore, its recited conclusions are binding upon this court, especially those to the effect that the prime objective of the agreement had been the furnishing of immediate telephone service by the one party to the other, that no consideration for it over

any particular circuit had actually been paid by appellant, and that the service actually furnished it by appellee over a circuit attached to the latter's own poles was just as efficient, private, trustworthy, and permanent as any that could have been furnished over the continued circuit on appellant's poles, as well as more economically to the appellee, it follows that no breach of any contractual obligation to the appellant was shown. Stone v. Robinson, Tex.Civ.App., 180 S.W. 135, writ of error refused; 21 C. J. 204, Sec. 200; 32 C.J. 34, sec. 14.

As these authorities make manifest, the existence of a right violated is not only a prerequisite to the granting of an injunction, but it follows also that—not having the right at all—the claim of damages for an assumed violation of it did not lie.

Since these conclusions determine the merits of the appeal, further discussion is deemed unnecessary; an affirmance of the judgment will enter.

Affirmed.

MONTEITH, J., participating as Special Commissioner.

### On Motion for Rehearing

GRAVES, Justice.

■■■ Appellant's motion for rehearing criticises a recitation in the original opinion to the effect that none of the trial court's fact-findings had been attacked by it as lacking support in the evidence, calling attention to the fact that in the back of its brief there appear assignments of error Nos. 5, and 12 to 17, inclusive, which appear to question some of the findings, along with challenges of their sufficiency as a matter of law; obviously, however, this is no such a challenge on appeal of the fact-findings of a trial court as lacking support in the evidence as the rules require; no propositions —followed by statements from the record pointing out the testimony upon the points raised, nor wherein it was insufficient—were made at all.

The motion has been carefully considered, but under the conclusion that the former disposition was correct, it will be overruled.

Refused.