AMERICAN NAT. INS. CO. v. VAN DUSEN.*
(No. 6487.)

(Court of Civil Appeals of Texas. Galveston. Dec. 17, 1913. Certified Questions Withdrawn and Rehearing Denied April 27, 1916.)

1. CONTRACTS ☞163 — INSURANCE ☞74 — CONSTRUCTION—PRINTED AND WRITTEN PROVISIONS.

Where a contract employing a superintendent of agents for an insurance company contained a printed provision recognizing the right of the company to discharge the superintendent at its pleasure, and also contained a typewritten provision that it should remain in force for five years, provided the superintendent made a stipulated increase in insurance, etc., the latter written provision controlled, since when some of the provisions of a contract are printed and some written, and there is a conflict between the printed and written provisions, the printed must yield.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 745; Dec. Dig. ☞163; Insurance, Cent. Dig. §§ 99, 100; Dec. Dig. ☞74.]

2. EVIDENCE ☞450(6) — PAROL EVIDENCE — AMBIGUITY OF CONTRACT — INTENTION OF PARTIES.

Where a contract of employment between its superintendent of agents and an insurance company provided in a typewritten clause that it should remain in force for five years, and in a printed clause that the company could discharge the superintendent at pleasure, such contract was ambiguous, and parol evidence admissible to show the intention of the parties.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2079; Dec. Dig. ☞450(6).]

3. INSURANCE ☞76—AGENTS—CONTRACT OF EMPLOYMENT—INTENTION OF PARTIES—SUFFICIENCY OF EVIDENCE.

In suit by its superintendent of agents against an insurance company for breach of his contract of employment, evidence held to show that the parties intended and understood that the superintendent's employment was for five years, subject to a stipulation as to increase in revenues, and that the company was not to have the right to discharge him at pleasure.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 101; Dec. Dig. ☞76.]

4. INSURANCE ☞79—AGENTS—CONTRACT OF EMPLOYMENT—RIGHT OF DISCHARGE.

Where the superintendent of agents of an insurance company violated his contract of employment in any particular, or was unfaithful in the discharge of his duties, the company could treat the contract as no longer binding, and dismiss the superintendent, though the contract provided that it should run for five years, provided the superintendent made a stipulated increase in business and collections.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 104; Dec. Dig. ☞79.]

5. INSURANCE ☞79—AGENTS—CONTRACT OF EMPLOYMENT—CONSTRUCTION.

The contract of employment of a superintendent of agents for an insurance company, which, after providing that the contract should run for five years, if the superintendent make a stipulated increase in business and collections, provided the compensation to which he would be entitled if the contract were terminated by "dismissal," referred, by the use of the word, to dismissal for causes besides a breach of the stipulation as to increase in business.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 104; Dec. Dig. ☞79.]

6. INSURANCE ☞85—CONTRACT OF EMPLOYMENT—AMBIGUITY—QUESTION FOR COURT.

In suit by its superintendent of agents against an insurance company for breach of his contract of employment, it was the province of the court to determine whether the contract was ambiguous in relation to the right to discharge.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 115; Dec. Dig. ☞85.]

7. MASTER AND SERVANT ☞42(1)—WRONGFUL DISCHARGE—DAMAGES.

The measure of damages for breach of a contract for personal services is the difference between what the employé would have earned under the contract and what he earned or might have earned by reasonable diligence in other employment.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 54; Dec. Dig. ☞42(1).]

8. INSURANCE ☞85 — AGENTS — ACTION FOR WRONGFUL DISCHARGE—PLEADING.

In an action by its superintendent of agents against an insurance company for breach of his contract of employment, it was not necessary that plaintiff's petition should allege what effort he made to reduce the damages caused him by his discharge by obtaining other employment, and what amount he earned or might have earned by reasonable diligence in such other employment.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 115; Dec. Dig. ☞85.]

9. INSURANCE ☞85 — AGENTS — ACTION FOR WRONGFUL DISCHARGE—EVIDENCE—EARNINGS.

In suit by its superintendent of agents against an insurance company for wrongful discharge, testimony of plaintiff as to the amount he would have made under the contract of employment, based on his statements as to what his earnings were before discharge, and the conditions existing in reference to the business after discharge, was admissible.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 115; Dec. Dig. ☞85.]

10. APPEAL AND ERROR ☞742(4)—ASSIGNMENT OF ERROR—SUFFICIENCY.

Where the statement under an assignment of error does not state what the testimony was to which the objection stated in the assignment was made, the assignment must be overruled.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. ☞742(4).]

11. APPEAL AND ERROR ☞1062(1)—HARMLESS ERROR—SUBMISSION OF ISSUE.

In suit by the superintendent of agents of an insurance company for wrongful discharge, the submission to the jury of a special issue as

to defendant's good faith in making the charges against plaintiff, on which it based its right to discharge him, was harmless to defendant.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4212; Dec. Dig. ⊚══1062(1).]

McMeans, J., dissenting.

Appeal from District Court, Harris County; Norman G. Kittrell, Judge.

Suit by J. P. Van Dusen against the American National Insurance Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Lane, Wolters & Storey, of Houston, and Williams & Neethe, of Galveston, for appellant. Clark & Kapner and Bryan & Bryan, all of Houston, for appellee.

PLEASANTS, C. J. This suit was brought by appellee against appellant to recover the sum of $12,000 damages for the alleged breach by appellant of a contract by which it had employed appellee to render personal services as superintendent of agents in the industrial branch of appellant's insurance business in the Houston district. The breach alleged was the wrongful discharge of appellee by appellant before the expiration of the term of employment, which it is alleged was for five years from April 20, 1908.

The defendant answered by general denial and specially denied some of the allegations of the petition. It further averred that by the terms of its contract with plaintiff it had the right to discharge him at any time and without cause. It also made charges against plaintiff, which if found to be true were sufficient cause for his discharge.

The cause was submitted to a jury in the court below upon special issues, upon all of which the jury found in favor of plaintiff. Upon this verdict judgment was rendered in favor of plaintiff for the sum of $10,031.75.

The contract for breach of which the suit is brought is lengthy and need not be set out in full. The following summary of its provisions, which quotes the provisions the construction of which is material to a proper disposition of this appeal, is copied from appellant's brief:

"It recites that it is made April 20, 1908, and that Van Dusen, in consideration of being appointed as superintendent of agents in the Houston, Texas, district, at the salary and with the emoluments specified, agrees as follows: There follow stipulations on his part numbered consecutively from 'First' to 'Seventeenth,' of which 13 are printed and the other typewritten. Following these are 9 typewritten stipulations on the part of the company. The 'Eleventh' of his is as follows:

" 'Eleventh—He acknowledges the right of the general manager or any other executive officer of the company to revoke this appointment at pleasure, and that he holds the superintendency (subject, however, to said right of revocation) only upon condition that he conforms in all respects to the rules, instructions and regulations of the company; and that any violation of this agreement, or of the rules, instructions and regulations of the company shall subject him to immediate and unconditional dismissal; it being understood that for the purpose of this agreement the rules, instructions and regulations above mentioned include such as may be prescribed and communicated by the general manager or any other executive officer to him from time to time.'

"In the 'twelfth' he agrees not to resign without having given seven days' notice.

"The 'thirteenth' provides that, in case of his resigning or being dismissed, he agrees, upon request, to introduce to his successor the agents in his district.

"The 'fourteenth' stipulation (typewritten) is as follows:

" 'Fourteenth—To make the following average increase on the company debit in Beaumont and Houston during each six months of the first four years from the date of this contract, first six months $100.00, second $200.00, and $75.00 during each of the remaining six month periods of the four years above mentioned, with an average of 92 per cent. collections, beginning with the twenty-first week from the date of first issue.'

"By 'company debit' is meant weekly premiums charged for industrial insurance.

"Following his stipulations are those of the company numbered from first to ninth, inclusive, none of which affect the question now being presented. Then comes this concluding clause:

" 'This contract to remain in full force and effect for five years from date hereof, provided superintendent makes the stipulated increase and per cent. of collections, and it is mutually agreed that if this contract and the employment thereunder shall terminate for any cause, by resignation, dismissal, death or otherwise, during any year, said contingent salary which said superintendent shall have then received from the company shall be in full settlement of all claims and demands upon the company in favor of said superintendent under this agreement and for his services up to that time in any capacity, and all further salary which a successful continuance of the superintendency might have secured to him shall be waived and forfeited.' "

Henry Sheffield, who was manager of appellant company, and in such capacity made the contract for the company with the plaintiff, but who was subsequently discharged by the company and was not in its service at the time he testified in the trial of this case, testified, in substance, that in April, 1908, the company's industrial insurance business at Houston was very unsatisfactory, and knowing that plaintiff was an experienced superintendent of such business, that he had represented other companies at Houston who were engaged in that line of insurance but had prior to the time above mentioned withdrawn from the state, and was acquainted with the conditions at Houston and knew best who to employ as agents there, he decided to secure plaintiff's services for appellant. With this end in view he went to Dallas, and through a mutual friend arranged for a meeting with plaintiff, who then lived at Sherman, Tex. The first meeting was at Dallas, and shortly thereafter witness went to Sherman and made a contract with plaintiff. This contract was in substance the same as the typewritten portions of the contract before mentioned. This typewritten portion of the contract was prepared by the witness and was afterwards attached to the printed form, which was the usual form of contracts made by the company with its superintendents. In regard to the

intention of the parties in the execution of the contract in respect to its duration, he says:

"The printed part, being the form of superintendent's agreement used by the company at that time, was used to give the contract the usual form, but I considered, and it was so understood, that the contract that we entered into is that reflected by the typewritten portion of the document which has been exhibited to me. The contract was to be for five years, subject to conditional clause fourteenth of the typewritten part of the contract. Van Dusen did insist upon having a definite time for him to represent the company under the contract, and I demurred, and would not give him the five-year term until I had referred the matter to the company. * * * Mr. Van Dusen and I did not intend making a contract whereby the American National Insurance Company could terminate the contract at its own pleasure or will, as is provided in the eleventh paragraph (printed), reading: 'He acknowledges the right of the general manager or any other executive officer of the company to revoke this appointment at pleasure,' but we did understand and intend that the contract should be determined under clause fourteenth of the typewritten form of the contract. It was my understanding that this contract should be in full force and effect for five years from date, provided superintendent made the stipulated increase and per cent. of collections, except in case of death, or that he failed to carry out the stipulations in clause fourteenth of the typewritten portion of the contract, as regards the making of the stipulated increase and per cent. of collections."

The plaintiff testified that he made a five years' contract, and the fact that it was a five years' contract was the inducement to him to enter into it and move from Sherman to Houston, and that he would not have made the contract if he had not understood that it was for five years. He was discharged by the defendant on April 3, 1912, a year and seventeen days before the expiration of the five-year term stipulated in the contract.

The evidence sustains the finding of the jury that plaintiff, during the time he was serving the company in the capacity in which he was employed, made the increase in the company's business stipulated in the fourteenth provision of the contract before set out; that none of the charges against plaintiff, averred by the defendant to be cause for his discharge, were true; that plaintiff would have made under his contract between the date of his discharge on April 3, 1912, and the expiration of the contract on April 20, 1913, the sum of $10,681.75; that the sum which he had made and would probably make between said dates was $650, and that by reason of his discharge plaintiff had sustained damages in the sum of $10,031.75.

Under the first assignment of error the appellant contends that because the contract sued on contains a clause giving the appellant the absolute right to discharge plaintiff at its pleasure, the trial court should have instructed the jury to return a verdict in favor of defendant.

Under the second assignment it is contended that the trial court erred in instructing the jury that said contract was a five-year contract, subject to termination only for failure of the plaintiff to increase the revenues of appellant as stipulated in the fourteenth provision of the contract, because the last provision of the contract, which declares that the contract shall "remain in full force and effect for five years from date hereof, provided the superintendent makes the stipulated increase and per cent. of collections," also recognizes the right of defendant to dismiss the plaintiff, "and the word dismissal therein used cannot be limited by saying that such dismissal could be only for breach of the stipulation in said contract to make said increase."

[1] These assignments raise the question of the proper construction of the contract, which is the material question presented by the appeal.

It seems to be well settled that when some of the provisions of a contract are printed and some written and there is a conflict between the printed and the written provisions, the printed must yield. 9 Cyc. 584, and cases there cited; Georgia Home Ins. Co. v. Jacobs, 56 Tex. 369; Armstrong v. Insurance Co., 112 S. W. 327; Michaelis v. Wolf, 136 Ill. 68, 26 N. E. 384.

It is admitted that the last paragraph of the contract above set out, which provides that it is to remain in force for five years, provided plaintiff makes the stipulated increase and per cent. of collections, was written, and that the eleventh provision above set out, in which the plaintiff acknowledges the right of the defendant to revoke his appointment at pleasure, is printed.

The majority of the court are of opinion that these provisions of the contract are in direct conflict, and under the rule above stated, as to conflicts between written and printed portions of a contract, the printed provision which recognizes the right of defendant to discharge the plaintiff at its pleasure should be disregarded.

[2, 3] But independent of this rule, the conflict between these provisions makes the contract ambiguous and parol evidence was admissible to show the intention of the parties, and the undisputed evidence which we have before set out shows that the parties intended and understood that the employment was for a term of five years, subject to the stipulation as to increase in revenues and collections, and that defendant was not to have the right to discharge plaintiff at its pleasure.

We do not understand that counsel for appellant, or our dissenting associate, contend that there is not a direct conflict between the provision in which the plaintiff acknowledges the right of the defendant to discharge him at its pleasure, and the clause in the last paragraph of the contract, which declares that the contract shall remain in full force and effect for five years, provided the

plaintiff makes the stipulated increase and per cent. of collections, but their contention is, that when the last paragraph is considered as a whole there is no such conflict because said paragraph recognizes the right of "dismissal," and, as stated in the second assignment of error above quoted, "the word dismissal therein used cannot be limited by saying that such dismissal could be only for the breach of the stipulation in said contract to make said increase."

[4, 5] We agree with counsel that the word "dismissal," as used in said paragraph, should not be so limited. We think it clear that it refers to dismissal for cause, and when given this meaning there is no ambiguity or uncertainty in the meaning of the last paragraph of the contract. The stipulation that the contract should remain in full force and effect for five years, provided plaintiff makes the stipulated increase and per cent. of collections, could in no way affect the right of defendant to discharge the plaintiff for cause. If plaintiff violated his contract in any particular, or was unfaithful in the discharge of his duty to his employer, the defendant, for its protection, could treat the contract as no longer binding and dismiss plaintiff from its service, notwithstanding the contract was to run five years, provided plaintiff made the stipulated increase in business and collections, and a dismissal of this kind is what is recognized in the last paragraph of the contract, which fixes the amount of compensation to which plaintiff would be entitled in the event the contract terminated by "dismissal."

It would be unreasonable to hold that because the defendant agreed that plaintiff's employment should be for five years on condition that he make certain stipulated increases in the defendant's business, that defendant was not authorized to discharge plaintiff for any breach of duty or violation of his obligations to his employer, however flagrant, and the right to discharge for violation of the orders of his superiors and the rules of the defendant company expressly reserved in the contract does not conflict with the provision that the contract is to continue for five years, provided plaintiff makes the stipulated increase in the business.

When the word "dismissal," as here used, is construed to refer to dismissal for cause, all of the provisions in the last paragraph of the contract harmonize. If we construe it as referring to dismissal at the pleasure of defendant, it conflicts with the first clause of the paragraph and adds to the ambiguity of the contract.

If every portion of this contract is to be given effect, the printed as well as the written, the agreement of the parties was that the plaintiff's employment should last for five years, provided he made the stipulated increase in the business and collections, that plaintiff could resign at any time by giving defendant seven days' notice, and that defendant could discharge plaintiff at any time without cause. There is no conflict between the five years' provision and the provision as to plaintiff's resignation. Both these provisions are clearly made for plaintiff's benefit. He could remain in the employment if he so desired for five years if he made the required increase in the business and did not commit such breach of duty to his employer as would authorize his discharge for cause, but he was not bound to continue in such employment for more than seven days after notice to defendant of his intention to resign. We see nothing unreasonable in an agreement of this kind and no legal objection to its enforcement. But the clause giving defendant the right to discharge plaintiff at its pleasure without cause entirely destroys all of the benefits which inured to plaintiff under the five years' provision. If plaintiff accepted employment terminable at the will of the employer, why insert a clause giving him the right to remain in the employment on certain named conditions? Such clause would give him no protection and would be entirely useless. We think the inconsistency and ambiguity in this contract is apparent.

We think the court properly instructed the jury that the contract was for five years if the stipulated increase in the business was made by the plaintiff, and he was not guilty of the charges made against him by defendant as grounds for his discharge, and this was the effect of the charge given the jury.

[6] There was no conflict in the evidence as to what portion of the contract was written and what portion printed, nor as to the intention and understanding of the parties executing the contract, and therefore there was no issue of fact to submit to the jury on the question of whether the contract was for five years or one terminable at the will of defendant, and the trial court did not err, as contended by the third assignment, in failing to submit that question to the jury. It was the province of the court to determine whether the contract was ambiguous, and that issue could not properly have been submitted to the jury.

Our conclusion that the contract is ambiguous disposes of the several assignments presented in appellant's brief complaining of the admission of parol evidence showing the intention of the parties in the execution of the contract. None of the testimony complained of was irrelevant or immaterial upon this issue. The rule that the written portion of the contract must control the printed, and our conclusion that the five-year clause is in conflict with the clause acknowledging defendant's right to discharge at pleasure, would render proof of the intention of the parties unnecessary; but the introduction of evidence showing such intention could not possibly have injured the defendant, and if

the rule as to written and printed portions of the contract should not be applicable the evidence was necessary to explain the ambiguity in the contract. Each of these assignments is overruled.

Under the ninth assignment it is contended that the court should have instructed the jury to return a verdict for the defendant because the petition fails to show what efforts, if any, plaintiff had made to secure other employment after his discharge by the defendant, or what amount, if any, plaintiff had earned or would probably earn between the date of his discharge and the termination of the five-year term, and therefore the petition fails to show that plaintiff had suffered any damage.

[7, 8] The contention that a petition in a case of this kind should allege what effort plaintiff had made to reduce the damage by obtaining other employment, and what amount, if any, he had earned or might earn by such other employment, is not without force. The measure of damages for breach of a contract for personal services being the difference between what plaintiff would have earned under the contract and what he earned or might have earned by reasonable diligence in other employment, it would seem to logically follow that plaintiff, in order to show what, if any, damage he has sustained by the breach, should allege the facts from which such damage could be ascertained. The point, however, has been ruled contrary to appellant's contention. In the case of Porter v. Burkett, 65 Tex. 387, our Supreme Court, in passing upon a special exception to a petition, say:

"As to the special exceptions, it was not necessary to allege that the plaintiffs could not have saved themselves from the consequences of the default of defendants by obtaining work elsewhere. If it were shown on the trial that they could, by this means, have reduced their losses or saved themselves harmless, it would have been a good defense, in whole or in part, to the cause of action. A plaintiff is not bound to negative everything that might defeat his action. If the damages he shows he has incurred are to be reduced from any cause not necessarily accruing, in all such cases this must be shown by the opposite party in defense."

We think this decision is conclusive against appellant's contention.

This holding also disposes of the tenth assignment, which complains of the ruling of the court in admitting the testimony as to the amount of plaintiff's earnings after his discharge, over defendant's objection that there was no basis for the testimony in the pleading.

[9] The testimony of plaintiff as to the amount he would have made under the contract being based on his statements as to what his earnings were under his contract before his discharge, and the conditions existing in reference to the business after his discharge, was admissible over defendant's objection that it was wholly speculative, vague, and uncertain. The amount of his compensation under his contract depended upon the volume of business obtained by him for the defendant, and the only way to ascertain what his earnings under the contract would have been was by comparison with the business before his discharge and the conditions affecting the business before and after his discharge. Plaintiff's estimate of his earnings was based on these comparisons and was properly admissible as evidence of what he would have earned under the contract if he had not been discharged.

[10, 11] The thirteenth and fourteenth assignments of error cannot be sustained. We are not informed by the statement under the thirteenth assignment what the testimony was to which the objection stated in the assignment was made. The question of good faith on the part of defendant in making the charges against the plaintiff on which it based its right to discharge him for cause was pertinent to the issue of whether such charges were true, and while it was unnecessary to submit such question to the jury as a special issue in the case, its submission could not have injured the defendant.

The majority of the court are of opinion that the judgment of the court below should be affirmed, and it has been so ordered.

Affirmed.

McMEANS, J. (dissenting). It is with regret that I feel compelled to disagree with the conclusions reached by the majority in disposing of the first and second assignments of error. It is true, as stated in their opinion, it is generally recognized as the law that where a printed provision of a contract contradicts, or is in conflict with, a written provision, the former must yield; but this is only where the two provisions are irreconcilable. There is also another well-recognized principle in the construction of contracts not directly referred to in the opinion of the majority, and that is, that the entire instrument must be taken and considered together. "If the instrument, when thus considered, is susceptible of a reasonable construction, by which all its provisions are made to harmonize, and by which full effect is given to its various parts, then that will be considered the correct interpretation." Hearne v. Gillett, 62 Tex. 26. The contract in question consisted of 26 stipulations, of which the first to the seventeenth are on the part of appellee, and the remaining 9 are on the part of appellant. The stipulations 1 to 13, inclusive, are printed, and the fourteenth to seventeenth, inclusive, are typewritten. In the eleventh, printed, appellee acknowledges the right of the general manager, or any other executive officer of appellant, to revoke the contract at pleasure, and further that he holds his position, subject to said right of revocation, only upon condition that he conform in all respects to the rules, instructions, and regulations of appellant, and

that any violation thereof should subject him to immediate and unconditional dismissal. In the thirteenth, also printed, appellee agrees not to resign without having given seven days' notice. It will be observed that the only stipulations providing for the revocation of appellee's appointment, dismissal, with or without cause, and his resignation, are contained in the printed portions of the contract. These, standing alone, undeniably give to the appellant the right to revoke the contract at its pleasure, to dismiss appellee for cause, and permits the latter to resign at any time after having given seven days' notice. Are these provisions in irreconcilable conflict with the stipulation which provides that the contract shall remain in full force and effect for five years from its date, provided appellee shall make the stipulated increase and per cent. of collections?

I contend that they are not, and here I am not in harmony with the majority. It is usual in all contracts of this kind to stipulate a period of years, months, or days in which the contractual relation between the parties shall exist; and in all these this relation ceases at the end of the named period by efflux of time, if not sooner ended by one or the other parties under some right given by the contract itself. It seems to me that the stipulation in question should be construed as merely fixing a time in which the contract should run, unless sooner terminated by one or the other parties under some other stipulation. Those stipulations were that the appellant might revoke the contract at its pleasure, or that appellee might be dismissed for any violation of the contract, or of the rules, instructions, and regulations of the appellant, or for failure to make the stipulated increase or per cent. of collections, or by his voluntary resignation after having given seven days' notice. It is permissible to explain a written instrument by parol testimony when its different provisions are in irreconcilable conflict. If they are in such conflict then there is such an ambiguity as to let in parol evidence to explain just what the parties intended to contract for, but if this can be gathered from the instrument itself parol testimony is not admissible. It seems to me that it was not required in this case to look to any evidence to explain the contract other than the contract itself. The written portions were made a part of the printed form, and it follows that the form was made a part of the contract. All parts of the contract actually made and put in a definite form are equally binding in law, and the intentions of the parties must be derived from it. Now take the last typewritten stipulation, which the majority concludes is in hopeless conflict with the eleventh provision, and we find there a provision which recognized that the contract and the employment thereunder might terminate before the expiration of five years, by resignation or dismissal. What did the parties

mean by the insertion of that provision? Certainly they did not intend to refer to any of the precedent typewritten provisions, for there is no stipulation in any of them relative to dismissal or resignation. Clearly, then, they had in mind the eleventh stipulation in which appellee acknowledges the right of appellant to revoke the contract at pleasure and to dismiss him for any violation of the rules, instructions, and regulations of the company, and the twelfth, in which appellee agrees not to resign without having given seven days' notice, and the thirteenth, which provides that in case of his resignation or dismissal he will introduce his successor to the agents of his district.

In the majority opinion it is asked, "If plaintiff accepted employment terminable at the will of the employer, why insert a clause giving him the right to remain in the employment on certain conditions?" and adds, "Such clause would give him no protection and would be entirely useless;" and upon this insists that the inconsistency and ambiguity in the contract are apparent. It may be answered that the eleventh stipulation having provided that the employer could terminate the contract at pleasure, the further provision in that stipulation that he might be dismissed for violation of the contract, or of the rules, instruction, and regulations of the employer, was unnecessary. But because of the insertion of this unnecessary provision it does not follow that an ambiguity arises between the acknowledged right of the employer to discharge the employé at pleasure, and the stipulation that he should continue his employment for five years. On the other hand, I think that the employment for a period of five years, subject to the precedent expressed condition of the employer's right to revoke the contract at will, is consistent with the abrogation of the contract and the employé's consequent dismissal at any time, with or without cause. This conclusion is in harmony with the holding of Judge Sanborn in Rankin v. Tygard, 198 Fed. 799, 119 C. C. A. 591, wherein he says:

"An election or appointment to an official position (as bank president) for a fixed term is, it is true, inconsistent with the removal during the term without cause in the absence of a precedent reservation of the right to make such a removal during the term. But an election or appointment to the office for a specified term subject to the precedent expressed condition that the elective or appointive power may remove at will at any time during the term is consistent with such a removal without cause and it is as much an election or appointment for a legal term as an election or appointment without such a reservation. It is an election or appointment for a fixed term subject to recall and the legal term is the time the person elected or appointed will hold his office if the power to recall is not exercised."

Substantially to the same effect is Willcox v. Ewing, 141 U. S. 141, 12 Sup. Ct. 94, 35 L. Ed. 882. The majority in reaching the conclusion it has must not only ignore the eleventh stipulation, which expressly recognizes

the right of revocation at pleasure, but other provisions of the contract as well. It must ignore language of the very clause upon which the decision is based, which expressly mentions other ways in which the employment may be terminated in addition to the lapse of time and failure to make the increase and per cent. of collections, as well as other parts of the contract to see how those causes may be made to operate. One of these is dismissal. Nowhere does the contract say dismissal must be for cause, but to the contrary it says it may be at pleasure. The right of resignation is recognized in this clause, but to see how resignation may be effected we are forced to look to other provisions. For causes for removal we are also forced to look to other provisions. Why then cannot those other provisions be looked to to see how dismissal may be effected? If we can so look, then we find that it may be at pleasure.

In my opinion there are no provisions of the contract that are so contradictory they cannot be harmonized, when the contract is construed in its entirety. If this conclusion is correct, it was the plain duty of the trial judge, and not the jury, to interpret it; and as there is no ambiguity in its provisions, as I construe the contract, the court, in my judgment, should have told the jury the appellant had the right to dismiss the appellee at pleasure, and that having exercised this right under the terms of the contract, the appellee was not entitled to recover.