### DALLAS HOTEL CO. v. LACKEY.
#### No. 13798.

Court of Civil Appeals of Texas. Dallas.
May 16, 1947.

Rehearing Denied June 27, 1947.

558

Clark, Coon, Holt & Fisher, of Dallas, for appellant.

Hassell & Hassell, of Dallas, for appellee.

YOUNG, Justice.

The suit was for breach of a contract allegedly guaranteeing a year's period of employment; and, following a jury verdict, judgment was rendered against the Hotel for $3,660 which is here appealed.

Appellee's claim is based primarily on a letter of date August 2, 1944 from H. Fuller Stevens, acting for defendant, viz.: "Mr. H. B. Lackey, Room 1345, Adolphus Hotel, Dallas, Texas. Dear Mr. Lackey: This will confirm our conversation this morning, in which I have engaged you to take over complete management of our drug store, at a salary of $450.00 a month, and prior to the end of a year's service, we will work out some additional compensation in the form of a bonus, which will equal $2,000.00 additional compensation. I hope that you will be able to assume your duties not later than the 20th of August, as there are a number of details, and the procurement of merchandise should be started immediately. Yours very sincerely, (s) H. Fuller Stevens, Managing Director." Interposed as a complete defense to the action was an instrument styled "Employment Agreement," undated, but signed, according to plaintiff Lackey, before he "went to work on August 25th." It reads: "This agreement made this ——— day of ———, 19— between Hotel Adolphus, herein called 'Employer,' and the undersigned employee, hereinafter called 'Employee.' Witnesseth That the Employer employs the Employee to work in or about the Hotel Adolphus, and the Employee accepts such employment upon the following terms: 1. The Employee agrees to work at the weekly, daily or hourly rate, as shown on the opposite space provided for same, and a part of this agreement. 2. It is mutually agreed that any lodging and/or meals furnished to the Employee by the Employer shall constitute a part of such Employee's compensation, and that the Employer is authorized to deduct from or consider a part of the wages of such Employee the sum of $2.50 per week for lodging, and the sum of 25¢ per meal for meals. 3. The Employee hereby agrees to wear such uniforms as may be required of him (her) by the Employer, and hereby authorizes the Employer to deduct from his (her) salary the sum of $——— per day/week for the rental, laundering and/or dry cleaning of said uniforms. 4. The Employee agrees promptly to deliver to the Employer any money, jewelry or other property which the Employee may find in or about the Hotel and hereby releases all rights therein and claims thereto. 5. The Employee hereby agrees to obey strictly all rules and regulations of the Hotel now in force or that they may be issued hereafter. 6. The Employee hereby pledges that he (she) will be no party to any law violation in or about the Hotel, hereby declaring that he (she) has been properly instructed and cautioned in regard to the same. 7. The Employee agrees that, if at any time during his (her) employment, the Employer shall desire to search his (her) person, baggage, clothing, packages and effects, he (she) will submit to such examination without objection, and he (she) hereby waives all claims for damages on account of such examination. 8. It is understood that the Employee has read over this contract and understands the same and agrees to every paragraph thereof, and this contract cannot be superseded by any oral agreement. 9. This agreement of employment is at the will of the Employer and the Employee may be discharged without cause at the will of the Employer, and the Employee agrees that he or she will make no claim for any wages or salary from and after the date of notice of discharge from the Employer. 10. I have read over the contract of employment with the Hotel Adolphus, and I have this day signed and I understand that my employment is subject to cancellation at any time at your pleasure, and I agree not to make any claim for future wages after notice of termination of the agreement. In witness whereof, the parties hereto have signed this agreement. Hotel Adolphus H. F. Stevens H. B. Lackey. Office Record Name, Lackey, Homer Bowden, Badge No. Address, Ambassador Hotel, Time Card No. Telephone Social Sec. No. 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 Date of Birth, April 30, 1902. Color, W.; Sex, M.; Single; Married. Education—Grammar 8 yrs. High School, 4 yrs. College, 4 yrs. Previous Employ-

ment: 1. Biltmore Hotel, Oklahoma City, 3 yrs. 2. 3. Date Employed 8-25-44. Position—Drug Store Mgr. Rate $450.00 Dept. Head. Mgr. HFS. * * *"

Jury issues and answers were, in substance, that (1) during the time H. B. Lackey was employed by defendant he reasonably well performed all duties of manager of the Adolphus Hotel Drug Store; (2) that plaintiff suffered damages in the sum of $1,660 by reason of his discharge as manager of the drug store prior to August 25, 1945; (3) that Richard Nash was prompted by malice toward plaintiff in discharging him; but (3) that he was not thereby entitled to exemplary damages. To the jury finding of $1,660, the court added the $2,000 bonus mentioned in above letter of August 2, making up the total judgment under review.

Appellee had been employed in Oklahoma City at the time of the August letter; but, upon its receipt, went to that city, resigned his position, sold his home, removing household goods to Dallas, and on August 25 entered upon the instant employment; being engaged for the first several months in buying stock for the drug store, then in process of installation. The new business opened on December 18, plaintiff continuing in his capacity as manager until April 15, 1945, when he was discharged by Richard Nash, managing director of defendant, and tendered 30 days additional salary in lieu of further notice.

Mr. Lackey moved back to Oklahoma City where he secured work in June 1945, his expenses incident thereto and salary deficit to August 1945 constituting items of the claim in suit. Mr. Stevens, for the Hotel, knew at time of said letter that plaintiff was quitting another job, selling home and moving to Dallas for purpose of entering the new employment.

Further defensive pleadings were to the effect that the contract of hire contemplated a rendition of services satisfactory to defendant which plaintiff failed to perform; detailing numerous infringement of hotel regulations, and failures to abide by orders and instructions of defendant's representatives; and much of the 320 page statement of facts is devoted to such issue

of fact. It is the substance of appellant's points 1, 2 and 3, that this case should be reversed because (a) the employment agreement was executed before appellee had gone to work and, as it involved the same subject matter and transaction, became the only contract between the parties, all prior dealings being merged therewith; hence any provision contained in the letter of August 2 must yield to the later writing; (b) a proper construction of the letter and employment contract, based on the intention of the parties, indicates a single contract, in which event all provisions of the August 25 agreement became effective, making plaintiff an employee at will, and waiving all claims for future salary and wages in event of discharge; (c) the writings, at most, simply evidenced an employment terminable from month to month and insufficient under undisputed evidence to support any claim of a year's contract of employment.

It is appellee's primary contention that he resigned his Oklahoma position and moved to Dallas in reliance on said August letter which imported a period of employment of one year, or to August 1945, hence the earlier discharge was wrongful; that the employment card signed on August 25, 1944 was inoperative as a contract or part of any contract between the parties because (a) without consideration and void; (b) showing upon its face that it was but a memorandum of plaintiff's history and background, and not intended to form a part of the contract of August 2; (c) the employment card, as a contract, was void because lacking in mutuality, providing, as it does, that the rights of the parties should exist only at the will of defendant; (d) if the writing of August 2 and the printed card of August 25 should be construed together as one instrument, then the typewritten letter contemplating employment for a year would take precedence over the printed card in case of irreconcilable conflict.

Plaintiff Lackey testified with respect to the execution of said letter: "A. After he (H. Fuller Stevens) had finished writing this letter he made either two or three copies. I should think it would be three copies. And he called the Auditor, Mr.

Etienne, to his office, introduced him to me, and told him that he had hired me to take over complete management of the drug store and showed him a copy of this letter and told him that that was to be attached to my employment card at the time I signed it and to be a part of it." That the letter was to be attached to and made a part of the employment agreement, was also developed by defendant on cross-examination; and concerning the employment card, plaintiff likewise testified at instance of defendant:

"Q. Immediately above that we see this provision, 'This agreement of employment is at the will of the employer'. Do you know what that means, Mr. Lackey? A. Yes, sir.

"Q. What does it mean, please sir? A. Well, it means just what it says. * * *

"Q. And immediately succeeding that statement, if you please, sir, 'and the employee may be discharged without cause at the will of the employer, and the employee agrees that he or she will make no claim for wages or salary from and after the date of notice of discharge from the employer.' Mr. Lackey, do you knew what that means? A. Yes, sir."

■■ Manifestly, the letter and employment card, executed for the same purpose and in course of the same transaction, are to be construed together. 10 Tex. Jur., p. 286. And the employment card, obviously being a form required for use by hotel employees generally, must yield to the letter of August 2 in event of conflicting provisions, for the reason that it comprehends "the immediate language and terms selected by the parties themselves as setting forth their intention, whereas the printed form is intended for general use without reference to particular objects and aims." Tex.Jur., supra, sec. 180, p. 312.

■■ Of controlling effect, therefore, are the recitals of defendant's letter relative to duration of appellee's employment over the inconsistent provisos of this employment card, whereby appellee was deprived of all rights attested to by the letter, becoming an employee at will. Recognizing the predominant effect of defend-

ant's written communication, the trial court has determined, and, we believe, correctly, that the offer of employment covered a one-year period as a matter of law. The language of said letter, engaging plaintiff "at a salary of $450 a month, and prior to the end of a year's service, we will work out some additional compensation in the form of a bonus," etc., was plain and unambiguous; but, even if ambiguous, the facts and circumstances surrounding the whole transaction were not disputed. "It appears to be well settled that where the contract is in writing and the doubt as to its meaning arises from the language the parties used, and not from extrinsic matters * * *, the question as to what the parties meant is for the court and not for the jury." Texas Const. Co. v. Dearing, Tex.Civ.App. 296 S.W. 1112, 1115, modified R. H. Dearing & Sons v. Texas Const. Co., Tex.Com.App., 1 S.W.2d 265; Turner v. Montgomery, Tex.Com.App., 293 S.W. 815; Brown v. Payne, 142 Tex. 102, 176 S.W.2d 306.

■■ The duration of any contract of employment involves, of course, a determination of what the parties mutually intended by their writing; and whether or not the mere stipulation of compensation to be paid for a specific unit of time (week, month or year) measures a definite period of hiring, has produced a contrariety of opinions in the Courts of America, and the development of majority and minority rules. See Annotations, 11 A.L.R. 469; 100 A.L.R. 834; 161 A.L.R. 706. In Texas, however, the rule is settled that, in absence of special circumstances, a hiring at a stated sum per week, month or year, is a definite employment for the period named; Dallas Hotel Co. v. McCue, Tex. Civ.App., 25 S.W.2d 902, citing authorities. But the circumstances of the hiring, though no time is expressly agreed upon, may show that it was to continue for a year, although the payment of wages was to occur monthly. Smith v. Theobald, 86 Ky. 141, 5 S.W. 394; Story on Contracts, 5th Ed., Sec. 1291, laying down the rule that "Where wages are payable at a stipulated period, as per week, or month, or half-year, such circumstance, standing alone, indicates that the hiring is

for such period. But, if there be anything in the contract showing that the hiring was *intended to be for a longer term, as for a year,* the mere reservation of wages for a lesser term, as per week or month, will not control the hiring." (Italics ours.) Likewise, the courts are in general accord on the proposition, "that the intention of the parties as ascertained from the terms of the contract, read in the light of surrounding circumstances, will control." 100 A.L.R.Annotations, supra, p. 841.

And so, in the case at bar we think that defendant's letter, reasonably interpreted, contemplates more than a month to month employment, plaintiff's compensation not becoming entirely due or payable until "the end of a year's service." Not only this, but surrounding circumstances, such as sale of home and removal of employee and family to the place of the new undertaking, has been usually deemed a factor of controlling weight. Putnam v. Producers' Live Stock, Marketing, Ass'n, 256 Ky. 196, 75 S.W.2d 1075, 100 A.L.R. 828; Dennis v. Thermoid Co., 128 N.J.L. 303, 25 A.2d 886.

"In construing a contract the court must seek the parties' intention from the words used, the subject-matter, and the purpose of the agreement, placing itself, if the intention is not clearly expressed, in the position of the parties, and then, from a consideration of the instrument as a whole, in the light of all circumstances, endeavoring to reach its real meaning, reconciling clauses apparently in conflict, if possible, to render the agreement fair, customary, and such as reasonable business men would execute." Stone v. Robinson Tex.Civ.App., 180 S.W. 135, Syl. 1, (writ ref.). We hold that the import of the two agreements taken together was an employment of appellee as manager of defendant's drug store at a salary of $450 per month, a reasonable performance of duties thereunder entitling him to a year's service and additional compensation in the sum of $2,000. The contention of defendant in this connection that the employment contemplated a service satisfactory to defendant, would in nowise affect

our conclusion here, for the jury has found that the discharge in question was not in good faith and without substantial cause. Keller v. Wolkarte, Tex.Civ.App., 132 S.W. 506; Rhodes-Haverty Furniture Co. v. Frazier, Tex.Civ.App., 55 S.W. 192; Texas Life Ins. Co. v. Roberts, 55 Tex.Civ. App. 217, 119 S.W. 926.

Under paragraphs 5 and 6 of the employment contract, an employee was bound to "obey strictly all rules and regulations of the hotel now in force or that may be issued hereafter"; agreeing that he would "be no party to any law violation in and about the hotel." Appellant's further grounds for reversal are (1) because of the undisputed testimony that appellee upon numerous occasions refused to follow or correct many violations of the Dallas City ordinance or sanitary code; (2) the court's refusal to submit its requested issue, viz.: "Do you find from a preponderance of the evidence that during the time H. B. Lackey was employed by the Dallas Hotel Company he did perform the orders and instructions given him by the Managing Director, Mr. Nash?"; (3) to the court's definition in connection with issue No. 1; arguing that the only instruction appropriate to the case was one requiring plaintiff to perform his duties in accordance with the terms of the contract. The charge reads: "By the term 'reasonably well performed,' you are instructed is meant that a person has used such skill and diligence as is ordinarily required of the manager of a drug store, of the character conducted by the Dallas Hotel Company."

Above contentions are overruled. The full measure of plaintiff's duty and obligation under the contract of hiring was that of substantial performance, adequately presented, we think, in the jury issue and finding that said duties had been reasonably well performed. "As a general rule a substantial performance upon the part of the servant is regarded as sufficient, and unless the employee has agreed to procure particular results, the results of his performance are not material." 39 C.J. 120; Page on Contracts, Vol. 5, 4913, sec. 2778, 2d Ed.

All points of error upon thorough consideration are overruled and judgment of the trial court affirmed.

### On Motion for Rehearing.

■ Appellant calls attention to the settled rule in construction of contracts that "Effect must be given to every part, and the whole be permitted to stand, if possible;" Stone v. Robinson, supra, 180 S.W. 135; arguing that there is no conflict in the letter and employment card, because, when taken together, they simply mean that at the completion of a year's service satisfactory to the hotel company, the stipulated bonus would be forthcoming, unless the employer-employee relationship be sooner terminated under paragraphs 9, 10 (employment card), "at the pleasure and will of the employer." The interpretation given in Texas Cotton Co-operative Ass'n v. Anderson, Tex.Civ.App., 67 S.W.2d 406, is thus sought to be applied, where one paragraph of the association contract terminated the employment by passage of time, another paragraph providing a method of termination by the act of one or the other of the parties. Manifestly, the case just cited is not in point, for a contract clause providing for services satisfactory to the employer, and another for termination at will of the employer, are directly in conflict. In the first instance there must be a bona fide dissatisfaction or cause for discharge, while in an employment at will, the severance of relationship may be without any cause whatever. 35 Am.Jur., secs. 26, 28, pp. 462, 463. More in point here is American National Insurance Co. v. Van Dusen, Tex.Civ.App., 185 S.W. 634, 637, where the contract was for a five-year period of employment on condition that Van Dusen make stipulated increases in revenues and collections, another paragraph providing for his dismissal at the pleasure of the company. In holding these provisos inconsistent, the court said: "But the clause giving defendant the right to discharge plaintiff at its pleasure without cause entirely destroys all of the benefits which inured to plaintiff under the five years' provision. If plaintiff accepted employment terminable at the will of the employer, why insert a clause giving him the right to remain in the employment on certain named conditions? Such clause would give him no protection and would be entirely useless. We think the inconsistency and ambiguity in this contract is apparent."

■ Even if we assume the position of appellant that the August letter contemplated an employment satisfactory to the hotel company, there must be shown to exist a basis of genuine dissatisfaction, absent here under the jury answer to Issue No. 3. See Tiffany v. Pacific Sewer Pipe Co., 180 Cal. 700, 182 P. 428, 6 A.L.R. 1493 (cited by appellant); also Golden Rod Mills v. Green, Tex.Civ.App., 230 S.W. 1089.

■ Much testimony was adduced by defendant bearing on the claimed non-observance by appellee of the city sanitary code, and appellant argues for the first time that it was entitled to a jury issue upon the particular question. None, however, was requested; in consequence of which, all such evidence became referable to the court's given issue on "substantial performance."

The motion for rehearing, after a due consideration, is overruled.