**RONNIE LOPER CHEVROLET–GEO, INC., Appellant,**

v.

**A.D. HAGEY, Jr., Appellee.**

**No. 14–97–01248–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

July 22, 1999.

Bill R. Jones, Livingston, for appellants.

Craig Welscher, Henry S. Platts, Jr., Houston, for appellees.

Panel consists of Justices MAURICE E. AMIDEI, EDELMAN, and WITTIG.

## O P I N I O N

MAURICE E. AMIDEI, Justice.

Ronnie Loper Chevrolet–Geo, Inc., (Loper) appeals from a judgment upon a jury verdict for A.D. Hagey, Jr., (Hagey) awarding him money damages in a breach of employment contract suit. In two points of error, appellant contends there is no evidence to support the jury's findings, or, in the alternative, such finding is contrary to the great weight and preponderance of the evidence and is manifestly unjust. We affirm.

Hagey sent Loper his resume in response to Loper's advertisement in a trade magazine for a general manager of Loper's automobile dealership. After interviewing Hagey, Vannaman, Loper's representative, indicated Loper wanted to hire Hagey as general manger. Vannaman sent Hagey a written proposal dated June 19, 1995, which Hagey modified as to salary. Loper agreed to the salary modifications, and Hagey went to work on June 21, 1995. On June 21, 1995, Hagey signed an application for employment and a written confirmation of the terms and conditions of employment. In the space labeled "Basis of Pay," on the written confirmation form, an unknown Loper representative wrote "per pay-plan (NLV) [the initials of Newton L. Vannaman]." On June 21 or 22, 1995, Loper provided Hagey with a written revised proposal reflecting their salary agreement. The written confirmation did not specifically refer to the "proposal" made the basis of this suit. A letter from Vannaman to Hagey, on Loper's stationery, dated June 20, 1995, with the proposal provided:

Mr. Butch Hagey

via fax 358–5739

Butch:

Following is the start-up job description and compensation proposal.

Let's discuss any questions prior to your arrival at the dealership. We are planning on a Wednesday start, if all issues are clear.

Attached to the letter was a document entitled "Proposal to Butch Hagy [sic]" dated "6/19/95" and stating short-term and long-term objectives for a "broad general managerial role." Paragraph IV of the proposal provided compensation as follows:

IV.  *Compensation*

1) $10,000 per month thru September (June prorated at $400 per day, including Saturday).

2) Base plus incentive plan to start October 1; to yield in annual range of:

— $125—150m—current activity level

— $150—200m—2000 annual units (total)

— $200—250m—3000 annual units.

The application for employment was a printed form made by Neil Companies, that provided spaces for personal information of the applicant, employment history, educational background, and references. Hagey completed only the personal information section, leaving the remaining part of the form blank. Loper's company name did not appear anywhere in the application as employer. Across the top of the form, in unknown handwriting, appears: "Janet: Make payroll checks out to A.D. Hagey, Jr., [illegible initials] 6–26–95." Hagey signed the application and dated it "6/21/95." Preprinted in the application is the following disclaimer:

I understand that just as I am free to resign at any time, the employer reserves the right to terminate my employment at any time, with or without cause and without prior notice. I understand that no representative of the employer has the authority to make any assurances to the contrary.

It is undisputed that the parties negotiated and agreed upon the terms of Hagey's employment as shown by the proposal before he signed the application form on June 21, 1995. After working for Loper for 47 days, on August 7, 1995, Loper told Hagey they were terminating him from the general manager position, and offered him a lower position at a reduced salary of $6000.00 per month. Loper offered no specific reason for this termination other than "things just weren't working out." Hagey rejected the offer of employment at a lower salary and quit. Loper paid Hagey according to the agreed salary of $10,000.00 per month but only through August 15, 1995. There was testimony at the trial that Hagey was "the worst general manager" Loper ever had, as well as testimony from other witnesses indicating his performance as general manager was adequate. The jury found that Loper had failed to comply with their written agreement, and awarded Hagey $15,000.00 in actual damages, an amount equal to the agreed salary of $10,000.00 per month from August 15 "through September," plus attorney's fees.

■ In point of error one, Loper contends there is no evidence to support the jury's finding that Loper failed to comply with any employment agreement it had with Hagey. In point of error two, Loper contends, in the alternative, that such a finding is against the great weight and preponderance of the evidence. When we review a no evidence claim, we consider only the evidence and inferences tending to support the jury's fact finding. *Leitch v. Hornsby,* 935 S.W.2d 114, 118 (Tex. 1996). We disregard all contrary evidence and inferences. *Id.* If there is any evidence of probative force to support the finding, we overrule the point of error and uphold the jury's finding. *Id.* If there is more than a scintilla of probative evidence in the record to support the finding, a no evidence challenge fails. *Id.* Loper argues that the key issue in this case is whether there is an employment contract modifying the at-will doctrine between Loper and Hagey. Loper cites *Montgomery County Hospital Dist. v. Brown,* 965 S.W.2d 501 (Tex.1998) as authority for the proposition that "the employer must unequivocally indicate a definite intent to be bound not to terminate the employee except under clearly specified circumstances." *Id.* at 502.

Loper argues that the proposal does not state a specific duration of time upon which any such employment is based, nor is there express limitation on the right to terminate. Hagey argues that the proposal provided an agreement to hire at a stated sum "through September" and was a definite contract for employment for that time.

■ The long-standing rule in Texas provides for employment at will, terminable at any time by either party, with or without cause, absent an express agreement to the contrary. *Montgomery County Hosp. Dist.,* 965 S.W.2d at 502; *Federal Express Corp. v. Dutschmann,* 846 S.W.2d 282, 283 (Tex.1993). A discharged employee who asserts that the parties have contractually agreed to limit the employer's right to terminate the employee at will has the burden of proving an express agreement or written representation to that effect. *Lee–Wright, Inc. v. Hall,* 840 S.W.2d 572, 577 (Tex.App.-Houston[1st Dist.] 1992, no writ). The presumption of at-will employment may only be rebutted by an agreement that directly limits, in a "meaningful and special way," the employer's right to terminate at will. *Massey v. Houston Baptist Univ.,* 902 S.W.2d 81, 83 (Tex.App.-Houston [1st Dist.] 1995, writ denied).

In the absence of special circumstances, however, Texas also follows the general rule practiced in England, which dictates that a hiring at a stated sum per week, month, or year, is a definite employment for the period named and may not be arbitrarily concluded. *Winograd v. Willis,,* 789 S.W.2d 307, 310 (Tex.App.-Houston [14th Dist.] 1990, writ denied); *Dallas Hotel Co. v. Lackey,* 203 S.W.2d 557, 561 (Tex.Civ.App.-Dallas 1947, writ ref'd n.r.e.). In this case, the parties agreed as to the terms of Hagey's employment as shown in the proposal approved by Loper. The proposal clearly states that Hagey would be paid $10,000.00 per month "thru September (June prorated at $400 per day, including Saturday)." In a factually similar case, *Dallas Hotel Co. v. Lackey,* the employee had a letter dated August 2, 1944, from the hotel confirming Lackey's hiring by the hotel as manager of its drug store at a stated monthly salary of $450.00 per month for a year. 203 S.W.2d at 559. There was no reference in the letter to the right of either party to terminate the contract at will. *Id.* Lackey went to work *after* he had agreed to the hotel's proposal in this letter, and executed an "employment card" with the hotel that contained an at-will termination clause. *Id.* The employment card was a printed form containing terms of employment for hotel employees in general, together with personal history information. *Id.* The form was signed by Lackey and a representative of the hotel. *Id.* The court of appeals held:

> Manifestly, the letter and employment card, executed for the same purpose and in course of the same transaction, are to be construed together. 10 TEX. JUR., p. 286. And the employment card, obviously being a form required for use by hotel employees generally, must yield to the letter of August 2 in the event of conflicting provisions, for the reason that it comprehends "the immediate language and terms selected by the parties themselves as setting forth their intention, whereas the printed form is intended for general use without reference to particular objects and aims." TEX. JUR., supra, sec. 180, p. 312.
>
> Of controlling effect, therefore, are the recitals of defendant's letter relative to duration of appellee's employment over the inconsistent provisos of this employment card, whereby appellee was deprived of all rights attested to by the letter, becoming an employee at will. Recognizing the predominant effect of defendant's written communication, the trial court has determined, and we believe, correctly, that the offer of employment covered a one-year period as a matter of law.

*Dallas Hotel Co.,* 203 S.W.2d at 561.

In this case, Hagey and Loper agreed to the terms of his employment as general manager *before* he went to work on June 21, 1995. The $10,000.00 per month salary through September was specific with respect to the amount of salary to be paid over a specific period of time. There was nothing in the proposal that reserved the right of either party to terminate the contract at will despite the salary proposal. The application was a general, printed form for all employees, and was submitted *after* the proposal was agreed upon, and *after* Hagey went to work. The application form was not completed by Hagey, was not signed by Loper, and said nothing about salary arrangements, nor did it reference the proposal in any fashion. Therefore, the jury had evidence of the parties' agreement that the employment was for a definite period of time, and "early termination [was] a failure to comply" unless the jury found that termination was for good cause. We find the evidence was legally sufficient to support the jury's verdict, and we overrule appellant's point of error one.

By his second point of error, Loper asserts the same evidence is factually insufficient to support the jury's verdict. When reviewing a fact finding to determine the factual sufficiency of the evidence, we must

consider and weigh all the evidence and should set aside the judgment only if the evidence is so weak as to make the finding clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d, 175, 176 (Tex.1986); *In Re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951). Having examined all the evidence, and in light of our discussion above under the no evidence challenge, we conclude the evidence supporting the jury's findings is not so weak as to make the findings clearly wrong and unjust. We overrule appellant's second point of error and affirm the judgment of the trial court.